THE NORTHERN CENTRAL RAILWAY COMPANY *vs.*
THE MAYOR AND CITY COUNCIL OF BALTIMORE.

SAME *vs.* SAME.

*Question in regard to the extension of Calvert and North streets
across the tracks of the Northern Central Railway Company
in the City of Baltimore,—as to whether the same should be
by viaducts or raised ways, and whether the cost of construct-
ing and maintaining the same should be borne by said Com-
pany or by the City of Baltimore.*

The law is well settled that where a new way or road is opened or made
across a way or road already existing and in use, the new way must be so
constructed as to cause as little injury as possible to the old way or road.

Under proceedings by the street commissioners of the City of Baltimore, for
condemning and opening North and Calvert streets, from John street to
North avenue, the proof showed that the tracks of the Northern Central
Railway Company at those points were laid, and their road was in use
some time before the said proceedings were commenced, and that the whole
of its land was necessary for the tracks of its road, and that the situation
of said tracks with reference to said street was such, that the only mode in
which the proposed streets could cross the tracks without great injury, both
to the company and the city, was by viaducts or raised ways of some
description. HELD :

That said streets must cross the land and tracks of the railway company by
viaducts or raised ways so as to allow its trains to pass below.

In view of a proposed change in the route of said railroad within the city, an
ordinance, (No. 77,) was passed September 26th, 1868, requiring the grades
of certain named streets crossing the line of the new route of said railroad,
to be raised *by the Mayor and City Council of Baltimore*, so as to enable the
railroad company to construct its railway tracks under said streets, and
providing that all open cuts along one of said named streets, "and other
streets shall be tunnelled by the said railway company." HELD :

1st. That in construing this ordinance, the location of the railroad at the
time, and its consequent inconvenience to the public, and disadvantage to

the neighboring property holders, as well as the then condition of the streets of the city, and the topography of the ground, over or through which the new railway tracks were to be constructed, and the streets of the city had been located and opened, or located only on the city plat, must be kept in view.

2nd. That as North and Calvert streets, so far as the railway company's property was concerned then existed only on the city plat, the said company had the right to use its property as if no such streets were contemplated by the city authorities, and to lay its railway tracks upon it.

3rd. That said ordinance should not be held to impose upon the railway company the burden of constructing and maintaining viaducts for North and Calvert streets, over its land and railway tracks, unless such be its plain language; and that the language used could not be held to refer to those streets.

4th. That the ordinance not having changed the rights and liabilities of the parties in respect to North and Calvert streets, they remained as they were at common law, as if the ordinance had never been enacted ; and the viaducts for said streets over the land and railway tracks of the railway company, must be constructed and maintained by the city at its own cost and expense.

5th. That in the condemnation and opening of said streets, damages and benefits must be assessed to the railway company, with reference to the mode of crossing its land and tracks by viaducts or raised ways.

APPEALS from the Baltimore City Court.

The cases are stated in the opinion of the Court.

*First Exception.*—The appellant the Northern Central Railway Company offered to prove by competent witnesses what would be the cost of the construction of a suitable viaduct to carry Calvert and North streets over the tracks of the Northern Central Railway Company, claiming that if, by the proper construction of the laws and ordinances applicable to the case, it was the duty of the appellant to construct the same, that then the cost of such construction was an element to be taken into consideration by the Court in assessing the damages to which the appellant was entitled to be allowed in these proceedings ; but the Court (BROWN, J.,) was of opinion, and ruled as matter of law,

that by the true interpretation of the laws and ordinances applicable to the case, the appellant was bound to construct said viaduct at its own expense, and that therefore the cost of said viaduct could not properly form an element to be taken into consideration in estimating the said damages, and rejected said evidence so offered by the appellant.    The appellant excepted.

*Second Exception.*—The appellant proved by competent evidence that the ground on which the tracks of the Northern Central Railway Company are constructed, where Calvert and North streets cross the said Northern Central Railway Company between John street and North avenue, is low, level, meadow land. and was so at the time said tracks were constructed, and at the time the Ordinance of the Mayor and City Council of Baltimore, No. 77, approved September 26th, 1868, was passed, and that said railway tracks where the same cross said Calvert and North streets, are laid on the surface of said level, low land, and that no cutting was made or required in the constructing of said railroad tracks where the same cross North and Calvert streets, and on the ground lying between these streets, but that whatever alteration was made in the natural surface was made by filling ; that said railway tracks on their way into the city, after crossing Calvert and North streets, cross, among other streets, Hoffman, John and Belvidere streets, and that the ground at each of said streets on the line of said tracks is high ground, and that it was necessary in constructing said railroad across said streets to do so by deep open cuts, which across John and Belvidere streets, have been tunnelled by said Northern Central Railway Company, said street being graded, and used streets at the time of the construction of said railway, and at the time of the passage of the ordinance of Sept. 26th, 1868, while said tracks where they cross Hoffman street, are still in a deep open cut, said street not having been then yet opened or graded.

And further proved that at the time of the passage of the said ordinance of September 26th, 1868, Charles, Eager and John streets, were paved streets.

The appellant further proved that the grade and topography of the ground on the line of North and Calvert streets as proposed to be opened, is such, that both of said streets can be constructed over the property of the Northern Central Railway Company by means of a viaduct crossing, and that considering the location and situation of the adjacent property and established grades of John and other streets, such a mode of crossing for said streets, would be the proper one for the interest of the City of Baltimore, and that said streets could not be constructed over said property of appellant by means of an embankment or even at grade, without serious and unnecessary injury to the appellant and its railway tracks and appurtenances.

And further proved that the ground on the line of North and Calvert streets, at John street, and between that street and the property of appellant going northwards, and again beyond the property of appellant and between it and North avenue, is high ground, and much higher than the ground of appellant on the line of said two streets, and that the said ground of appellants is a valley between hills on the one side and on the other.

The appellant further offered evidence proving that all of the ground belonging to appellant on Calvert and North streets, as proposed to be opened, is used and required for railway purposes, and is not more than is required and proper for such purposes.

And appellant offered evidence tending to prove that the opening of said streets would be of no benefit to appellant nor to its property, but would damage the same to some extent even if said streets were carried across by a viaduct, said damage being caused by the abutments or columns of the said structure.

The evidence being closed, the appellant offered the two following prayers:

1. It having been proven to be practicable to construct North and Calvert streets by means of viaduct crossings over the property of the appellant, mentioned in the proceedings, and that considering the location and situation of the adjacent property and established grades of adjacent streets, it is shown that such crossings are the proper ones for the interest of the City of Baltimore; and it also appearing that said streets cannot be constructed by means of an embankment, or even at grade, over said property, without very serious and unnecessary injury to the appellant, therefore the Mayor and City Council of Baltimore can only construct the streets, by viaduct crossings, and can only condemn the right to construct in such manner; and the estimate of damages should be made subject to such duty of the Mayor and City Council of Baltimore, to construct and maintain such viaduct at its own expense.

2. The evidence in this cause having shown that the property designated on the damage plats for opening North street as B and E, and for opening Calvert street as D, was acquired by the Northern Central Railway Company for railroad purposes, and is now used for said purposes, and that the said property is required for the proper and convenient conduct of its business at said points, the Mayor and City Council of Baltimore, in constructing and carrying the said streets across and over the said property of the said company, is bound to, and shall, so construct and carry the same over the said property, as not to interfere with the reasonable uses and enjoyment by the said company of the said property for its present railway tracks and any additional tracks it may require in the conduct of its business to be laid on the said property, and so as also not to obstruct the passage of trains over the said tracks, the evidence in this cause having established that such a mode of construction of the said streets is practicable and proper; and that if the said streets shall be constructed and carried

over and across the said property of the said company in any other way than on a level with the present grade of the railroad track, they shall be so constructed and carried by bridges or viaducts designated and erected in such a manner that the reasonable uses of the said property for the location of the tracks of the said company and the passage of its trains thereon shall not be interfered with; and that the cost of the erection and maintenance of the said bridges or viaducts in perpetuity, shall be borne by the Mayor and City Council of Baltimore; and that the damages to be allowed to the appellant in these proceedings shall be estimated upon the basis that the said streets shall be carried and constructed through the property of the appellant in such mode and manner as not to interfere with or destroy the reasonable uses of its property for railroad purposes; and the appellant is also entitled to compensation for whatever damage, if any, may result from the taking of the said property for the construction of the said streets.

The Court (BROWN, J.,) refused to grant the said two prayers and filed the following opinion:

" These cases come to this Court on appeal by the Northern Central Railway Company from the awards of the street commissioners of the City of Baltimore assessing benefits and allowing damages for the opening of Calvert and North streets, northwardly to North avenue, the northern boundary of the city, and they have been submitted to the Court for its decision without the intervention of a jury.

" These streets will cross the property of the appellant in places now occupied by railroad tracks appertaining to its road; some of these tracks connect with the Baltimore and Potomac Railroad, some with the Union Railroad and some with the Western Maryland Railroad, while some extend to the station of the appellant on Calvert street in the city, and others run northward forming the main line of the appellant's road. *Sixty-one* trains daily pass over

those which are in the neighborhood of the Union Depot on Charles street, and they are in constant use for making up trains as well as for transportation of freight and passengers ; the connection of the tracks with the road of the Baltimore and Potomac Railroad is authorized by the ordinance of the city, of May, 1869, sec. 10 ; the connection with the Union Railroad is authorized by section 9, of its charter, contained in the Act of 1870, ch. 119 ; and the connection with the Western Maryland Railroad is authorized by the ordinance of the city, of 1875, No. 97, approved May 24th, 1875. The city commissioners have condemned a portion of this property of the appellant for the crossings of said streets as indicated by the plats filed in the case, and the questions presented are: 1st. What property or what right should be condemned? 2nd. What damages, if any, should be allowed appellant ; and 3rd. Is the appellant or the appellee to pay the expense of the street crossings?

"The same questions of law arise in each case, and the facts in each are substantially the same It is in proof that all the tracks and all the space condemned are necessary for the proper working of the appellant's road. It is manifest that if the streets should cross the tracks at the existing grade of the latter, they would very seriously interfere with the business of the appellant, and would thereby inflict on it great loss and injury. The tracks as now laid are much below what must be the established grade of the streets when they shall be opened, and if the tracks should be raised to the proper grades of the streets, the sudden and considerable increase of grade of the tracks would be such as nearly, or perhaps *entirely*, to destroy the traffic of the appellant ; the amount of injury which would thus be inflicted on the appellant could not well be estimated ; moreover, if these streets should cross the tracks either at their present grade or at any grade suitable for the purpose of the railroad, the streets would

become almost worthless for the purpose of passage or transportation by reason of the constant use of the tracks for railroad purposes.

"The only mode then in which the streets can cross the tracks without great injury both to the appellant and the public, is by a viaduct or raised way of some description, and this is the mode clearly prescribed by the City Ordinance of Sept. 26th, 1868, No. 77. By this ordinance the appellant was authorized and required to remove its tracks from the position they formerly occupied, to the place where they now are, and the removal has since been made by the appellant in pursuance of and in obedience to this requirement. The permission of the city was necessary for the removal of the tracks to their present position, because the streets are under the control of the city authorities, and cannot be used by a railway company for its tracks without their sanction. All the provisions of the ordinance became binding on the appellant when it availed itself of the permission given. The appellant accepted the ordinance by acting under it. The preamble recites that ' it is desirable that railway tracks in the city should be so constructed as that they should cross or pass along the streets below the grade thereof, whenever practicable,' and adds ' that the Northern Central Railway Company desires to remove the tracks of its railway leading to Calvert Station from its present location to the northeastern side of Jones' Falls, and desires so to construct its new tracks as that whenever they cross or pass along streets the said tracks shall be constructed below the grade of said streets wherever such method of construction is practicable.' The preamble thus plainly declares the object and extent of the ordinance, and would furnish a safe guide to its meaning if there were any ambiguity in the subsequent provisions. It is the declared purpose both of the city and the appellant that the new tracks shall be constructed by the appellant below the grade of the streets

wherever such method of construction is practicable.    In the case of these streets it is clearly practicable.

" The 1st section carries out by express enactment the general intent declared in the preamble; it provides that the grade of Charles street, between Hoffman and Lanvale streets, and the grade of Eager street, between North and Buren streets, be raised and changed under the direction of the Mayor and City Council, so as to enable the Northern Central Railway Company to construct its railway under said streets, and *all open cuts along Hoffman and other streets shall be tunnelled by the said Railway Company.* The tracks of the appellant are now laid on the soil in a manner which the Court considers an open cut within the meaning of the ordinance, in the places where they are to be crossed by Calvert and North streets; and they are, therefore, by the express words of the ordinance, required to be there tunnelled by the appellant.

" The word tunnelled is manifestly used in contradistinction to open cutting.    The open cuts along or across the streets are to be 'tunnelled,' that is to say, covered over in the manner of a tunnel by the appellant; a tunnel is defined to be a subterranean passage for a canal or road.  ' *Worcester Dic., in loca.*'  'In general, tunnels are formed through hills in order to avoid the expense of an open cutting.'

" In this case, as these open cuts pass through a hollow, not a hill, and as the streets are to be carried over them, the word ' tunnelled ' can only mean covered over in the manner of a tunnel by an arched or raised structure shaped like a tunnel, and more usually called a viaduct.

" Thus understood the clause in question is perfectly intelligible, and the whole ordinance is consistent and carries out the declared intention of the appellant and the appellee, while any other construction would render the clause absurd and unmeaning, and would make the section inconsistent with the preamble.

"If there were any doubt about the meaning of the clause, which I think there is not, it is made plain by the language of the preamble quoted above. Two prayers have been offered by the appellant, both of which assume that the tracks are to be crossed by viaducts, but they maintain that the viaducts are to be built by the city at its expense, and that the appellant is entitled to such damages as it may sustain by reason of such viaduct. I think it clear, from the preamble and the first section, as I have already said, that the viaducts or tunnels are to be constructed by the appellant and not by the city. But it is contended that it is shown by the 2nd section of the ordinance that the expense of the viaducts is to be borne by the city. The language of the section is as follows : 'Section 2nd. And be it enacted and ordained, that all expenses incurred in making said changes of grades, including the tunnelling and repaving of all paved streets, shall be paid by the said Northern Central Railway Company.'

"The changes of grade mentioned in the 2nd section, refer to the changes of grade of Charles street and Eager street, ordered to be made in the 1st section, both being *paved* streets, and being the only streets in which a change of grade was made necessary by the ordinance ; as this change of grade was to be made *under the direction of the Mayor and City Council,* there was good reason why there should be an express provision that the expense should be paid by the appellant, otherwise it would have been contended that the city should provide for the cost, and the tunnelling and repaving mentioned in the 2nd section refer expressly to *paved* streets *only*. They therefore include Charles and Eager streets.

"The 'tunnelling' includes also John street (although it was not mentioned by name) because it was then paved. It was the only other street to be crossed which was then paved, but its grade was not changed, and it therefore did not require to be repaved. The entire section refers exclu-

sively to paved streets, and therefore does not relate to the work to be done by appellant iu tunnelling the open cuts as directed in the first section, including said open cuts at the crossing of North and Calvert streets, nor does it refer to the work to be done in removing the old tracks, as required by the third section, as to all this work the principle applies that as it is to be done by the appellant in carrying out a plan designed by it for its own benefits, it should be paid for by the appellant. The only right condemned is that of crossing the property of the appellant by proper tunnels or viaducts to be erected by the appellant at its expense, and as this is required to be done by the ordinance, and as the appellant must ·be considered to have received an adequate consideration therefor in the privileges conferred by the ordinance, the appellant is not entitled to damages. I therefore reject the prayers of the appellant.

" The commissioners have allowed the nominal damages of one dollar to the appellant for each of the two crossings of North street, and they have allowed the sum of $5142 for the crossing of Calvert street. The reason of these allowances is not explained by the commissioners in their proceedings, but I am informed that only nominal damages were allowed in the case of North street, because the street had been previously dedicated to the public, and that the damages were allowed in the case of Calvert street, which had not been so dedicated, as a compensation for the value of the property crossed. But as all these crossings are to be tunnelled by the appellant in accordance with the ordinance, and as the uninterrupted use of the crossings beneath the raised ways is, according to the ordinance, to be retained by the appellant for railroad purposes, I think that only nominal damages should be allowed in each of the cases. In the matter of the benefits assessed against the Northern Central Railway Company, I am of opinion that these should be struck out, and only

the nominal sum of $1.00 in each case should be assessed for benefits. Having determined that the bridge structures, by which each of these streets will be carried over the property of the said company, must be erected at the sole cost and expense of said Northern Central Railway Company, and being satisfied by the evidence that the adjacent lots are required for railroad purposes, I do not think that the company can with justice, be assessed for benefits, and having reduced the damages of $5142.84, awarded by the commissioners in favor of the company in the case of Calvert street, to the nominal sum of $1.00 and retained the damages allowed by them in the case of North street at the nominal sum of $1.00, I shall also reduce the award of benefits to the same amount, that is to say the sum of $1 00 in each case.

"In conformity with this opinion, I do hereby confirm the damages allowed in the case of North street, and set aside the damages allowed in the case of Calvert street, and instead thereof allow the nominal damages of $1.00 in said case ; and I do hereby set aside the benefits assessed in each case, and award the nominal sum of $1.00 for benefits in each case, the costs to be paid by the Mayor and City Council of Baltimore."

The appellant excepted, and took these appeals, and the parties, entered into and filed the following "Agreement:"

"It is hereby agreed, that the opinion of the Court filed in this cause by the Chief Justice, shall form part of the record in the case, and that said opinion as to such parts thereof as bears on the construction and intrepretation of the laws and ordinances of the State and city, and as to all other matters of law therein decided, shall be considered as rulings made by the Court on matters of law at the trial of the cause, and the same shall on appeal by either party, be subject in all respects to review in the Court of Appeals, to all intents and purposes as if embodied in formal instructions."

The causes were argued before BARTOL, C. J., STEWART, BOWIE, BRENT, GRASON and MILLER, J.

*Bernard Carter*, for the appellant.

It is the duty of the tribunal having proper jurisdiction of the matter in cases of this kind, to declare that the highway shall be constructed on that plan as shall interfere as little as possible with prior existing rights and easements, is fully established. See *Manser vs. N. & E. R. R.*, 2 *Eng. Rail. Cases*, 380; *Tuckahoe Canal Case*, 11 *Leigh*, 79, 80, 81; *Kyle vs. Aub. & Roch. R.*, 2 *Barbour's Chancery*, 490.

The proceedings for the condemnation and opening of these streets were not had until the beginning of the year 1875; the appeal being taken March 20th, 1875. The railway of the appellant where these streets when opened would cross, had been constructed and been in active use for a considerable period before the institution of said proceedings, (in point of fact prior to the year 1870, though the date is not given in the record.) We have to consider the case then of an *existing* road, (or highway so to speak,) and all the easements properly appertaining thereto, belonging to the appellant, and in active use, proposed to be crossed by *another* road, way or street, (by whichever of these names we may choose to designate it,) which *latter* or *new* road or way, it is now to be taken as conceded, can only be constructed across the former or *older* road or way, with a due regard to the preservation and proper enjoyment of the last mentioned road, by "a viaduct or raised way." (Court's opinion, beginning of of 1st paragraph.)

In such cases, those proposing to carry a *new* road or way across the old or existing road or way, must do so by such structure as will interfere as little as possible with the older right, and that said structure must be built and maintained at the sole cost and expense of those desiring to construct the second or new road or way.

In support of this proposition, we refer to the following authorities. *Morris Canal Co. vs. The State,* 4 *Zabriskie,* (*N. J.,*) 62 ; *Manser vs. N. & E. R. R.,* 2 *Eng. R. Cases,* 380 ; *Tuckahoe Canal Case,* 11 *Leigh,* 79, 80, 81 ; *The King vs. Kerrison,* 3 *Maule & Sel.,* 526 ; *The King vs. Inhabitants of Kent,* 13 *East,* 220 ; *The King vs. Inhabitants of Lindsey,* 14 *East,* 317 ; *Richardson vs. Biglow,* (SHAW, Ch. J.,) 15 *Gray,* 156, 157 ; *Purley vs. Chandler,* 6 *Mass.,* 454 ; *Washburne on Easements,* 197, (*star page;*) *City of Lowell vs. Proprietors of Locks, &c.,* 104 *Mass.,* 22 ; *City of Hannibal vs. Han. & St. Joe R. R.,* 49 *Missouri,* 481.

The principle running through these cases is, that where there is an *existing easement,* whether in the shape of a highway, or road, or way, or water-course, either natural or artificial, and another or *newer* easement is created or to be exercised, those who are interested in the *latter,* whether it be the public who wish to make a highway across an *existing* railroad, or a railroad company which wishes to make its railroad across an *existing* highway, must, in the first place, cross the existing way in such mode and by such structure as will interfere as little as possible with the prior right, and must, in the second place, be at the *cost* of this structure.

If the prior road or way *cannot* be crossed without damage to it, then the damage must be assessed and paid, if there is a right to cross given expressly or by necessary implication.

But even the right to cross or *interfere at all* with the prior easement, will not be presumed to have been intended to be granted by the Legislature, unless the presumption is a necessary one. *New Central Coal Co. vs. George's Creek Coal & Iron Co.,* 37 *Md.,* 564 ; *Union R. R. vs. Balt. & Havre de Grace Co.,* 35 *Md.,* 224.

The principle above referred to is thus stated by Chief Justice PARSONS, in 6 *Mass.,* 454, stated, and adopted by *Washburn on Easements,* p. 197, (*star page.*)

Northern Central Railway Co. *vs.* Mayor, &c. of Baltimore.

" If the *public* locate a way across an *existing* water-course, either natural or *artificial,* the *public* must make and maintain a *bridge* across the same. But if the owner of the soil constructs a water-course under a highway already *existing,* he must make and keep in repair the bridge."

Again, in 15 *Gray,* 156, 157, (above cited,) in a case where the defendant had an easement in the shape of a race-way, and plaintiff had also an easement in the shape of a right of way on a line which would cross this race-way, Mr. Chief Justice SHAW thus states the law with his usual precision :

" The plaintiff's was not an actual way built or in use, but was a right of way, and as such carried with it the right of *fitting it* for actual use ; but defendant was in the actual use of his race-way. Could both of these rights be enjoyed together without interference? We think they could. Defendant had a right to a race-way sufficiently wide and deep to carry off the water from the mill. If plaintiff could *not* use his right of way otherwise, he had a right to build a *bridge* over the race-way. The land travel could be carried *over* the stream, but stream could not be carried over the way ; it must retain its level. Necessity, therefore, would determine how both these rights could co-exist, and both be beneficially used.

" Then comes another rule, that he who enjoys the benefit of an easement in another's soil, must be at the *expense* of fitting, maintaining and repairing it. If, therefore, the plaintiff would enjoy the benefit of a *way,* either a foot-way or carriage-way, over the defendant's race-way, *he must erect a suitable bridge over it.*"

Again, in the *City of Lowell vs. Proprietors of Locks, &c.,* 104 *Mass.,* 22, the Court say :

" It may be true where a highway is located over land across which the owner, intending to make a beneficial use thereof, has *commenced* the construction of a water-

course, that the public easement must be subject to such prior appropriation, so that the original cost of the bridge, and the burden of its support will be on the *public.*    In such a case, the bridge should be ordered *as a part of the original location* and construction of the way."

Again, in the case of *Morris Canal Co. vs. The State,* 4 *Zabriskie,* 62, it was held that where a canal having been in existence, a highway was subsequently desired by the public and laid out, the public must build and pay for the bridge required to carry the highway across the canal.

In this case, Justice ELMER says that, "at *common law,* counties were chargeable with making and repairing public bridges within their limits, unless some other person or bodies corporate were shown to be liable."

Again, in 14 *East,* 317, (*King vs. Inhabitants of Lindsey,*) in a case where authority was given to improve a canal and river by making "navigable cuts" alongside, and these *new* cuts crossed an old highway in such a way as to make a bridge necessary,—

LE BLANE, J., says: " The authority given to the company to make the ' cut' which rendered the highway impassable without a bridge, must create in *them* an obligation to erect the bridge ; although the word *authorize* in the Act would not of itself create the *obligation."*

And BAYLEY, J., says: " The bridge is rendered necessary for the purposes of the company, but not for the purposes of the inhabitants of the parish.    The latter might have *continued* to *use* the ford (the *old* highway) as they did before the works, executed by the company for their own benefit, deprived them of the use of it."

It is to be noted in reference to the case just cited, that in that case, it happened that the *older* easement was that of the public, viz , the highway, which was interfered with by the *newer* one belonging to the private company, and so of course in *that* case the private company had to build a bridge.    But of course, as is abundantly shown in all the

cases, it makes no difference whether the public or the private company happen to own the older easement, it is this *older* one which has to be protected. And referring again to the language of BAYLEY, J., quoted above, and applying it to our case, we may say—

"The bridges over Calvert and North streets are rendered necessary for the purposes of the public to enable them to have a highway to the northern boundary of the city, but not for the railway company, which would be very glad to have no bridge or highway over their tracks. The latter (the R. R. Co.) might have continued to use their railway (the existing easement) as it did before the opening of streets about to be opened, made a bridge neces- sary."

To the same effect are the cases of *King vs. Inhab. of Kent*, 13 *East*, 220 ; and *King vs. Kerrison*, 3 *M. & Sel.*, 526.

It is perfectly apparent that the whole scope and object of the Ordinance of 1868, No. 77, was to indicate *how* the railroad should pass streets, that is, below the grade thereof, and not *at all* to deal with the general question of who was to defray the *cost* of the *construction of the streets* over the railroad tracks, the only streets in reference to which anything was designed to be provided on the subject of their costs were the streets then already *paved*, in reference to *which* it was provided that they should be restored to their former condition at the cost of the railway company.

That, in this view, the cost of the construction of the bridges or tunnels, though to be constructed by us, form an element of the damages to be awarded to us, we regard as conclusively established by the following authorities. *Grove vs. Ches. & O. C. Co.*, 11 *Gill & J.*, 398 ; *Tyson vs. County Commissioners*, 28 *Md.*, 525 ; *Kyle vs. Auburn & R. R.*, 2 *Barb. Ch.*, 490 ; *Dealon vs. Boston and Concord R.*, 24 *N. H.*, (4 *Foster*,) 186 ; *Ibid.*, 114 ; *March vs. Ports. & Con. R.*, 19 *N. H.*, 372 ; 40 *Penn.*, 56.

To compel the company to build the bridges, and yet exclude their cost from the estimate of damages to be allowed when the rights over the property are condemned, in these proceedings, for the opening of these streets, is unconstitutional. It is practically taking the property without compensation. *Balto. & H. de Grace Co. vs. Union Railway Co.*, 35 *Md.*, 230; *City of Lex. vs. McQ.*, 9 *Dana*, 518, 519, 520; *Cooley on Const. Lim.*, 508, (*star page ;*) *Pumpelly vs. Green Bay Co.*, 13 *Wall.*, 166; *Woodruff vs. Neal*, 28 *Conn.*, 165.

*Jas. A. Buchanan*, for the appellee.

The obligation of the appellant is to be construed just as if the streets barred its way at the time the tracks were laid. If the city should construct these streets according to the established grade, they would present an insurmountable barrier at right angles with the company's tracks, and until, by a tunnel or otherwise, the barrier was pierced, it would be impossible to operate that portion of the road.

Full power is given by its charter, to the Mayor and City Council of Baltimore " for laying out, opening, extending, &c., any street, square, &c., &c., within the bounds of said city, which in their opinion, the public welfare or convenience may require." *Code, vol.* 2; *Art.* 4, *sec.* 837.

The right of way in the railway company must be held subject to the exercise of this power.

There can be no question made as to the right of the city to conduct its streets over the tracks of the appellant. In the absence of the ordinance, it might have been doubtful whether the city or the appellant was bound to pay the expense. But the right to cross could in no event be disputed.

There is no time fixed by the ordinance when the obligations of the appellants to pay the expense of tunnelling cross streets ceases.

The obligation is imperative to tunnel all open cuts, and to pay the expenses of the work. These streets then, in our view of the liability created by the ordinance, are to be treated as existing at the *time*, and as crossing the road-bed, designed for the company's tracks, when the same were laid.

As to the meaning of the word tunnel, we refer to the opinion of the Court below.

It would be a very limited definition indeed, which would confine the application of the term to a bore through a hill. But it would be unreasonable to give it such narrow application in the case in hand, looking to the plain intent and object of the ordinance.

Terms of art will not be permitted to defeat the intent.

Ambiguous terms will be presumed to have been used in agreement with the subject-matter. *Smith's Com. on Stat. and Const. Law, secs.* 484, 631.

It may be suggested, too, perhaps, that the phrase "open cuts" is not to be confined to a cut of that description, made by the appellant while engaged in the work of preparing its road-bed.

If such a cut existed, from natural or other causes, it would be equally the duty of the appellant to tunnel.

If the obligation to conduct the said streets across the company's tracks is not complete by the express requirements of the ordinance, then the company must compensate the city for the condemnation of the right of way over said streets. And any fair measure of compensation would be the cost of constructing a way for the streets over the tracks of the company. *Baltimore & Havre de Grace Turnpike Company vs. Union R. W. Co. of Baltimore,* 35 *Md.,* 224.

It also follows, that the obligation to tunnel is not limited to *paved* streets, but extends to all streets crossed by the tracks of the appellant, and that appellant's first and second prayers ought to have been rejected; and that the judgment of the Court below must affirmed.

GRASON, J., delivered the opinion of the Court.

These two cases came before Baltimore City Court upon appeals from the Street Commissioners of the City in the matter of assessments of damages and benefits to the appellant in the condemnation and opening of North and Calvert streets from John street to North avenue. They were tried together before the Court, without a jury, and two exceptions were taken by the appellant, the first to the exclusion of the evidence set out in the exception, and the second to the rejection of its two prayers. By an agreement of counsel the opinion of the Judge of the City Court is made part of the record, and all such parts of it as bear on the construction and interpretation of the laws and ordinance of the State and City, and all other matters of law therein decided, shall be considered as rulings by the City Court, and upon this appeal shall be subject to review to all intents and purposes as if embodied in formal instructions. The judgments were in favor of the Mayor and City Council, and from them the Railway Company has taken these appeals, the facts and principles of law being exactly the same in the two cases, and both argued together.

After a very careful examination of the cases and the authorities cited by the counsel of the respective parties, we are of opinion that the City Court erred in rejecting the appellant's prayers, which, we think, correctly present the law as applicable to these cases.

The law is well settled that when a new way or road is opened or made across a way or road, already existing and in use, the new way must be so constructed as to cause as little injury as possible to the old way or road. *Manser vs. Northern and Eastern R. R. Co.,* 2 *Eng. Railway and Canal Cases,* 391, *marg.*

The proof in these cases shows that the appellant's tracks were laid and their road was in use some time before the proceedings to condemn and open North and

Calvert streets were commenced, and that the whole of its land is necessary for the tracks of its road, and that the opening of the said streets across it at its present grade would very seriously injure its usefulness as a railroad, while the streets themselves, looking to the formation of the ground and the existing grade of other streets of the city, would be very inconvenient to the public, and the crossings at the railroad extremely dangerous. If, on the other hand, these streets were carried over the low land of the appellant by embankments or fillings, so as to raise them to a level with the grades of other streets, those parts of the tracks of the appellant's road would be destroyed, and barriers interposed to the running of its trains from the places where the embankments would be made, to its Calvert street station. We agree, therefore, with the learned Judge of the City Court, that the only mode in which the proposed streets can cross the tracks, without great injury both to the appellant and appellee, is by viaducts, or raised ways of some description. Such crossings seem to have been contemplated by Ordinance No. 77, approved September 26th, 1868, the preamble of which recites that "it is desirable that railway tracks in the city should be so constructed as that they should cross or pass along the streets below the grade thereof whenever practicable." North and Calvert streets must therefore cross the land and tracks of the appellant by viaducts or raised ways so as to allow its trains to pass below.

The next material and important question in these cases is, at whose cost and expense such viaducts or raised ways shall be constructed and maintained? At common law it is undoubtedly the rule that where a new way or road is made across another which is already in existence and use, the crossing must not only be made with as little injury as possible to the old road or way, but whatever structures are necessary for such crossings must be erected and maintained at the expense of the party under whose

authority and direction they are made. And if the old road or way cannot be crossed without damage to it, and the right to cross is given, such damage must be assessed and paid. This principle is recognized as settled law in many well considered cases, among which we refer to *Morris Canal vs. The State, 4 Zabriskie, 62; Richardson vs. Bigelow, 15 Gray, 156, 157; Perley vs. Chandler, 6 Mass., 454; Lowell vs. Proprietors of Locks and Canals, 104 Mass., 22; Manser vs. Northern and Eastern R. R. Co., 2 Eng. Railway and Canal Cases, 387; The King vs. Kerrison, 3 Maule & Selwyn, 532; King vs. Inhabitants of Lindsey, 14 East, 320, 321.*

The counsel of the appellee admitted this to be the established common law principle, but contended that the rule was changed in the cases now under consideration, and the burden of constructing the viaducts was imposed upon the appellant by the City Ordinance No. 77, of 1868, before referred to, and it was upon this ordinance alone that the decision of the City Court was based. It is entitled "An Ordinance to alter the grade of certain streets in the City of Baltimore;" and the preamble recites "that it is desirable that railway tracks in the city should be so constructed as that they should cross or pass along the streets below the grade thereof whenever practicable; and that whereas the Northern Central Railway Company desires to remove the tracks of railway leading to Calvert station from their present location to the north-eastern side of Jones' Falls, and desires so to construct its new tracks as that whenever they cross or pass along streets, the said tracks shall be constructed below the grade of said streets whenever such method of construction is practicable; and whereas the owners of a majority of the feet of ground fronting and binding on the streets in the first section of this ordinance, have presented to the Mayor, and City Council of Baltimore their petition asking the grades of said streets may be changed between the points named in

said first section of this ordinance." It plainly appears from this preamble that the change of the grades of the streets mentioned in the petition and ordinance, was authorized to be made for the common benefit of those owning land on said streets, and of the public generally.

The first section provides that the grades of Charles street, between Hoffman and Lanvale streets, and of Eager street, between North and Buren streets, shall be raised by *the Mayor and City Commissioner*, so as to enable the Railroad Company to construct its railway tracks under said streets; and the section then closes in the following words: " and all open cuts along Hoffman and other streets shall be tunelled by the said Railway Company." It is contended that the closing clause of the section just quoted imposes upon the Company the burden of construct-ing the viaducts for North and Calvert streets over its land and railway tracks. It is clear that the main object to be accomplished by the enactment of the ordinance was to raise the grades of Charles and Eager streets, between the points named, to enable the appellant's road to be con-structed below said grades, and this, as we have before stated, was to be done for the common benefit of the land owners whose property fronted on the streets, and of the public generally. It was contended by the counsel of the appellee that the ordinance also conferred benefits on the appellant by giving it a new and better route for its road from the city limits to its Calvert street station; but we cannot perceive how any benefit to it was intended or was conferred by the ordinance in question, further than by raising the grade of Charles and Eager streets. The appellant, at the time of the passage of the ordinance, already had its railway constructed and in use from the city limits to its Calvert street depot, and if it desired to change its location to the northeast side of Jones' Falls it had full power and authority to make such change by the Act of 1849, ch. 532, sec. 2, and irrespective of the ordi-

nance No. 77 of 1868.. It cannot, therefore, be held that
the appellant is bound, under the ordinance, to construct
the necessary crossings over its tracks as a consideration
for the benefits and privileges granted to it by the ordi-
nance, as was contended by the counsel for the appellees.
At the time the ordinance was passed Charles street was
an important channel of communication and travel between
the city and country, and the track of the appellant cross-
ing it at grade was, no doubt, found to be a great inconve-
nience to the public, as well as an obstacle to the advance
and extension of improvements north of the railway, and
it was to remedy these evils that the ordinance was passed
to raise the grades of Charles and Eager streets so as to
enable the appellant's road to pass below them instead of
at grade. The same proceedings were had to raise the
grades of said streets as are necessary to effect the change
of grade of any street in the city. . A petition of the
owners of a majority of feet fronting and binding on the
two streets, whose grade was sought to be changed, was
filed, asking for a change of the grades, and the ordinance
directed the change to be made by the *Mayor and City
Commissioner*. In. construing this ordinance, the rights
of the appellant, the objects to be accomplished by the
ordinance, the location of the railroad at the time, and its
consequent inconvenience to the public and disadvantage
to the neighboring property holders, as well as the then
condition of the streets of the city, and the topography of
the ground over or through which the railway tracks were
to be constructed, and the streets of the city had been
located and opened, or located only on the city plat, must
be kept in view. At that time North and Calvert streets
had not been condemned or opened north of John street,
though they were laid down on the city plat. The land of
the appellant lies on the northeast side of Jones' Falls,
and is low, level land, while that both north and south of
it is high land. The tracks of the railway have been laid

on this bottom, level land, which required no cutting what-
ever until Hoffman street, not then opened, but located on
the city plat; was reached.    Cuts had to be made through
the land where Hoffman street was located, as also through
John and Belvidere streets, where the ground was high.
Charles, Eager, and John streets were the only streets
crossed by the railway which had then been paved.    Keep-
ing all these facts in view, what does ordinance No. 77
provide with respect to the appellant or its railway tracks?
It provides: First, For raising the grades of Charles and
Eager streets, between the points named in the ordinance,
"so as to enable the Northern Central Railway Company
to construct its railway tracks under said streets;" and,
next, "That all open cuts along Hoffman and other streets
shall be tunnelled by said railway company."    It has been
seen, however, that the whole of the ground between
Charles and the location of Hoffman street is low and level
and required no cutting, and none was made, the railway
tracks having been laid on the surface of the ground.    It
cannot be supposed that the framers of the ordinance ever
contemplated that *open cuts* would be made, in construct-
ing the railroad upon · such ground, which was on a level
with the main line of the appellant's railroad, or that they
ever thought that *tunnelling* would be required where no *open
cuts* could be made.    The closing part of the first section
of the ordinance must be, therefore, applied to such streets
only through which *open cuts* were necessary for the con-
struction of the railway.    North and Calvert streets, so far
as the appellant's property was concerned, then existed
only on the city plat, and the appellant had, therefore, the
right to use its property as if no such streets were con-
templated by the city authorities and to lay its railway
tracks upon it.    This principle was held by our prede-
cessors long before the passage of the ordinance in ques-
tion, and the Mayor and City Council having been parties
to the case, must be held to a knowledge of it at the time

this ordinance was passed.    In the case of *Moale vs. The Mayor and City Council of Baltimore*, 5 *Md.*, 322, the City sought to open a street through Moale's property and to allow him only nominal damages, because, when he purchased the property, a street through it had been located on the city plat.    But this Court, through LEGRAND, Chief Justice, said : "It is not incumbent on the city authorities to adhere to the line of the streets as laid down in the city plat.    The power to widen, open, or close up any street in the city rests entirely in the discretion of the corporation. A person, under these acts (1817 and 1838,) may, for an indefinite space of time, be deprived of the use of his property, because it lies in the bed of a street designated on the plat of the city, and eventually find, whilst he has paid taxes and been denied the advantages to which he was entitled from the proper use of his land, the street laid down on the plat has been abandoned.    Such a state of things is repugnant to every notion of justice and cannot obtain our consent."    In view of all the facts, we think that the ordinance, No. 77, should not be held to impose upon the appellant the burden of constructing and maintaining viaducts for North and Calvert streets over its land and railway tracks, unless we are compelled to do so by its plain language.    We think that the language used in the first section cannot be held to refer to the streets named, because at that time they existed only on paper, and the ground over which they would pass, if extended, required no *open cutting* for the construction of the railroad, and, consequently, no *tunnelling ;* and, further, because the language can be fully gratified by applying it to Hoffman street, which is expressly required to be tunnelled, and John and Belvidere streets, which are near the location of Hoffman street, and which it was necessary to tunnel, and which have been tunnelled by the appellant.    The words "other streets," used in the first section, are fully gratified by their application to John and Belvidere streets.

But even if the first section, taken alone, was of doubtful construction, when taken in connection with the second section, all doubt is removed. The second section deals exclusively with the cost and expense of the changes provided for by the first, and specifies in express terms what part of it is to be borne by the appellant. It enacts that " all expenses incurred in making said changes of grade, including tunnelling and repaving of all paved streets, shall be paid by said Northern Central Railway Company."

The only expense imposed by this section upon the appellant is expressly limited to that of *making the said changes of grade*, that is, the changes of grade of *Charles* and *Eager* streets, including the cost of tunnelling and repaving the streets *which were then paved*, to wit : *Charles*, *Eager*, and *John* streets. These streets being then streets graded, paved, and in use as streets, it was, no doubt, thought to be only right and equitable that the appellant should bear the cost and expense of repairing the damages which would be done to said streets by taking up the pavements and cutting through them in the construction of the railroad. The appellant was, therefore, required to bear the expense of repaving these streets, including the cost of tunnelling, in addition to that of changing the grades of Charles and Eager streets, they being the only streets whose grades it was necessary *to change* in order to enable the railway to pass below them. The remainder of the expenses were not provided for by the ordinance, but were left to be provided for, under the general system of the city government for condemning, grading, and paving streets, at such times as the city should, in its discretion determine to proceed with such work. The second section having, in express terms, provided what part of the expense shall be borne by the appellant, it cannot, by implication, be subjected to any other or greater expense.

The ordinance not having changed the rights and liabilities of the parties to these cases in respect to North and

Calvert streets, they remain as they were at common law, as if the ordinance had never been enacted, and it follows, therefore, that the viaducts for said streets over the land and railway tracks of the appellant must be constructed and maintained by the appellee at its own cost and expense.

From this it also follows that, in the condemnation and opening of said streets, damages and benefits must be assessed to the appellant with reference to the mode of crossing its land and tracks hereinbefore decided to be the only proper one; that is, by viaducts or raised ways.

In the view we have taken of these cases it becomes unnecessary to pass upon the first exception.

*Judgment reversed, and*
*cause remanded.*

(Decided 8th March, 1877.)