BOSTON AND MAINE RAILROAD COMPANY

*vs.*

COUNTY COMMISSIONERS.

OLD ORCHARD BEACH RAILROAD COMPANY *vs.* Same.

York.   Opinion June 2, 1887.

*Constitutional law.   Railroads.   Crossings.   R. S., c. 18, § 27.   Police power. Damages.*

The provisions of R. S., c. 18, § 27, requiring that the expense of building and maintaining so much of a town way or highway as is within the limits of

the railroad, where such way crosses a track at grade, shall be borne by the railroad company, are constitutional.

Those provisions are applicable to a company though its charter provides that it is not to be altered, amended or repealed, and they do not impair the obligation of any contract with such company.

The power of the legislature to impose such burdens for the general safety is fundamental. It is the police power, which must be sufficiently extensive to protect all persons and property.

Police power defined. *State* v. *Noyes*, 47 Maine, 189, considered too narrow.

In estimating the damages of a railroad company for land taken in laying out a way across its track the jury are not to take into account any damages for expenses in defending itself against claims for accidents at such a crossing.

On exceptions, and motion to set aside the verdict and for new trial.

These two cases were appeals to this court from awards of land damages, made by the county commissioners, to the corporations for the taking of a portion of their lands, and crossing their railroads at grade, by the location of a county way three rods in width.

Both were tried together.

Appellants asked the court to give the jury the following instructions as applicable to the claim of the Boston and Maine Railroad, viz. :

(1.) "A railroad corporation across whose road another railroad or a highway is laid out, has the like right, as all individuals or bodies corporate, owning lands or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures on the land, or changes in its surface, absolutely required by law, or in fact necessary to be made by the corporation injured in order to accommodate its own land to new condition."

(2.) "The appellant is entitled to recover damages for taking its land for the purposes of a highway, subject, however, to its use for a railroad; for the expense of erecting and maintaining signs required by law at the crossing, for making and maintaining cattle guards at the crossing if necessary, and for the expense of flooring the crossing and keeping the planks in repair."

(3.) "In as much as the charter of the Boston and Maine

railroad is not subject to legislative power to 'amend, alter or repeal' acts of incorporation since March 17, 1831, appellant is not subject to the provision of R. S., c. 18, § 27, imposing ou it the duty of bearing the expense of building and maintaining so much of this way as is within its limits without being entitled to recover as land damages a sum sufficient to indemnify it for the additional expense, thus by law put upon it by the location of this way."

(4.) "While no damages for increase risk of accidents by reason of the crossing can be given, yet if the present and actual value of the entire property be diminished because of the expense reasonably to be apprehended as inevitably incidental to such accidents and claims arising therefrom, and the adjustment of, or defence against such claims, this is an element of damages which you may take into account."

The court declined to give any of the four, except as may be contained in the charge to the jury.

The points thus presented are concisely stated in the opinion.

*G. C. Yeaton*, for the plaintiff.

Instructions numbered (1) and (2) are quoted directly from *Massachusetts Central Railroad Company* v. *Boston, Clinton and Fitchbury Railroad Company*, 121 Mass. 124, 126 ; and *Old Colony and Fall River Railroad Compang* v. *County of Plymouth*, 14 Gray, 155, 163, (with such verbal changes as fits the language to the cases at bar,) and we assume will be conceded sound and applicable to the cases at bar, except so far as they may be affected by so much of the provisions of R. S., c. 18, § 27, as embodies the provisions originating in c. 214 of 1874, and modified by chap. 43 of 1878, that "when such way crosses the track at grade, the expense of building and maintaining so much of such way as is within the limits of such railroad shall be borne by the railroad company whose track is so crossed."

It was claimed at *nisi prius*, and may be claimed here, that this statutory provision has received full and final construction by this court in the late case, *Portland and Rochester Railroad*

*Company* v. *Inhabitants of Deering*, Eastern Reporter, March 13, 1886, p. 98 ; 78 Maine, 61 ; and that the opinion in that case entirely covers the ground taken by appellants in these cases. Whatever may be conceded, so far as the appeal of the Orchard Beach Railroad Company is concerned, it is not admitted that this statute applies to the Boston and Maine Railroad.

The statute was held valid, because that corporation (the Portland and Rochester Railroad) was admitted to be within the scope of the provisions of R. S., c. 46, § 23, originating March 17, 1831, subjecting all acts of incorporation subsequent to the last mentioned date to legislative alteration and amendment, "unless they contain an express limitation," as also subsequent to the constitutional amendment above referred to.

Exactly this limitation the original charter of the Boston and Maine Railroad does contain. The act of March 30, 1836, c. 179, § 17, provides, "That an act entitled 'an act concerning corporations,' passed March seventeenth, in the year of our Lord one thousand eight hundred and thirty-one, shall not extend or apply to the company hereby incorporated." Webb's Railroad Laws of Maine, 86.

The spirit, and, in part, the scope, of the protection afforded by this exemption, as well as the entire constitutionality of this, and similar statutory provisions, this court has declared in *State* v. *Dexter and Newport Railroad Company*, 69 Maine, 44. Nor will it be claimed that this exemption was lost by the corporation, in any way, until the act of 1871, c. 630. Webb, *Id.* pp. 90, 91.

Some of the marks of distinction between an act or incorporation and a grant of additional power to an existing corporation, are pointed out in *State* v. *Maine. Central Railroad*, 66 Maine, 488.

It follows, then, the act of 1871 not being an act of incorporation, but merely an additional grant to an already existing corporation, that the question is not whether this act confers the exemption from the legislative power to "amend, alter, or repeal," but whether this exemption, already one of appellant's powers or privileges, is, by the act of 1871, taken from it. It

is not a question of grant but of repeal. *Vide State of Tennessee* v. *Whitworth, Tr. etc.* 6 Sup. Ct. Rep. 649, citing a line of twelve decisions of the same court from *Philadelphia and Wilmington Railroad Company* v. *Maryland*, 10 How. 394, to *Chesapeake and Ohio Railroad Company* v. *Miller*, 114 U S. 185.

As to the difficulties of any repeal of specific legislation by general, or of special provisions by general language, *vide Webb* v. *Ridgeley*, 38 Md. 364; *Fitzgerald* v. *Champneys*, 30 L. J. Ch. 782; Wilberforce on Stats. 318, 330, 331, 334; Maxwell on Interp. of Stats. 66; Dwarris on Stats. 530, 532.

The power of the legislature to subsequently require a railroad corporation to construct any portion of a way not in existence at the date of its charter, can only be supported as an exercise of what has been termed the police power, which, being inalienable in its nature, the legislature must forever retain.

One of the plain limitations it can never transgress, is the boundary line which surrounds vested property rights. Cooley, Constitutional Limitations, p. 572; Morawetz, Private Corporations, p. 443; *Railroad* v. *Richmond*, 96 U. S. 521, 528.

Illustrations of the rightful exercise of this power, and impliedly, if not of its exact limit, certainly of a field clearly beyond this limit, *quoad* regulation of railroads at their intersection with public ways, may be found cited by Mr. Morawetz, in Private Corporations, § 443, *et seq.*, including two domestic decisions; viz.: *Norris* v. *Androscoggin Railroad*, 39 Maine, 273; *Inhabitants of Veazie* v. *Mayo*, 45 Maine, 560.

A very full discussion of the nature and limits of the police power is found in *Philadelphia, Wilmington, and Baltimore Railroad Company* v. *Bowers*, 4 Houst. 506, 537. See also *State* v. *Commissioners*, 37 N. J. L. 240. Unless the land owner is paid such sum as leaves him in as good condition as he was before the taking, no sophistry can reconcile the process with the constitutional provision protecting private property against confiscation. *Atlantic and Pacific Telegraph Company* v. *Chicago Rock Island and Pacific Railroad Company*, 6 Bissell, 158, 161; Morawetz Private Corporations, 436.

*R. P. Tapley*, for defendants, cited: *State* v. *Bunker*, 59

Maine, 366 ; *Browne* v. *Bowdoinham*, 71 Maine, 144 ; *Bigelow* v. *Hillman*, 37 Maine, 52 ; *Estes* v. *Troy*, 5 Maine, 368 ; *Com* v. *Coupe*, 128 Mass. 66 ; *Fitchburg Railroad* v. *Page*, 131 Mass. 395 ; *Lawrence* v. *Mt. Vernon*, 35 Maine, 100 ; *Sprague* v. *Waite*, 17 Pick. 309 ; *Hannum* v. *Belchertown*, 19 Pick. 312 ; *Walker* v. *Pierce*, 38 Vt. 98 ; *Richardson* v. *Pond*, 15 Gray. 390 ; *Curtis* v. *Keesler*, 14 Barb. 511 ; Webb's Railroad Laws, 90, 87 ; *Stetson* v. *Bangor*, 60 Maine, 315 ; S. C. 73 Maine, 357 ; *Memphis Railroad* v. *Comr's*, 112 U. S. 609 ; 10 How. 416 ; 13 How. 71 ; 1 Blackf. 360, 436 ; 8 How. 569 ; *Ohio and M. Railroad* v. *Wheeler*, 1 Blackf. 286 ; *Muller* v. *Dows*, 94 U. S. 444 ; *New Jersey* v. *Yard*, 95 U. S. 104.

EMERY, J.   The county commissioners of York county laid out and established a county road, crossing at grade, the tracks of both the appellant railroad companies, and made an appraisal of the damages sustained by each company from the necessary appropriation of its land within the limits of its location.   The railroad companies appealed, and the question of damages was tried before a jury in this court.

The bill of exceptions presents practically only two questions, one raised by the first three exceptions, and the other by the fourth exception.   The solution of these two questions will dispose of all the exceptions.

The legislature had ordered by R. S., c. 18, § 27, that in such cases, the railroad company shall at its own expense build and maintain so much of said county road as is within the limits of the railroad.   This court held in *P. & R. R. R. Co.* v. *Deering*, 78 Maine, 61 ; that this statute duty of the railroad company did not entitle it to any extra compensation for the taking of its land—that the expense thus put upon the railroad company was not to be considered in appraising their damages.   The result in the case cited is decisive against the claim of the Orchard Beach railroad company on this point, as its charter is expressly subject to legislative control.

The Boston and Maine railroad company, however claims that its charter is not subject to "amendment, alteration or repeal,"

the state having therein stipulated against such action. We do not think it necessary to express any opinion on this claim.

The company further claims, that by reason of such stipulation in its charter, the legislature cannot lawfully require this company to bear such burdens without providing pecuniary compensation, since such requirement would impair the obligation of the contract between the state and the company contained in the charter. We do not think such a result necessarily follows from the assumed premises.

Perhaps the question of the legislative authority over this company in this particular cannot strictly arise until the company refuse to comply with the statute, but as the company intimate their wish to obey the statute, and only claim that the burden imposed by it, is an important element in the appraisal of their damages, we may properly pass upon the question in this proceeding. The question can perhaps be more directly presented, if stated in this way. Could the legislature lawfully impose this burden on this company, in the case of a pre-existing county road? Could the legislature lawfully. require this company to assume the care of county roads (within its location) existing and crossing its track before the enactment of the statute? If the legislature could impose this duty as to pre-existing roads without compensation, it certainly could do so, as to future roads. There must be the same answer to either statement of the question.

In determining whether a statute is within the powers of the legislature, or whether it "amends, alters, or repeals" a charter contrary to stipulation, it is important to ascertain the intent or purpose of the statute. The purpose of this statute was evidently to promote the safety of travelers both upon the railroad and the county way. In view of the nature of the ordinary steam railroad, and the dangers necessarily attending its operation, and the onerous liability of the railroad company to its patrons and the public, it is clear that the company should have the whole control of all things necessary to be done within its location, for any purpose, whether for the benefit of the company, or that of the public. It must practically have the exclusive

possession of the land within the lines of its location.  *Hayden* v. *Skillings*, 78 Maine, 413.  An independent and possibly antagonistic interest or authority should not be admitted within those lines.

Still, that part of the county way within the lines of the railroad location must be kept safe and convenient for travelers upon it.  It must also be so constructed and maintained as not to endanger safety in operating the railroad.  The one need combines with the other.  The county way is as necessary as the railroad.  To ensure such construction and maintenance, to ensure such safety upon both roads at the point of intersection, to protect travelers upon both roads, to provide for the better security of persons and property, the legislature has put this whole matter of construction and maintenance of both roads within the railroad limits, upon the railroad company.  The company is required to do this for its own protection and that of citizens generally.

This power of the legislature to impose uncompensated duties and even burdens, upon individuals and corporations for the general safety, is fundamental.  It is the "police power."  Its proper exercise is the highest duty of government.  The state may in some cases forego the right to taxation, but it can never relieve itself of the duty of providing for the safety of its citizens.  This duty, and consequent power, override all statute or contract exemptions.  The state cannot free any person or corporation from subjection to this power.  All personal as well as property rights must be held subject to the police power of the state.  *Beer Co.* v. *Massachusetts*, 97 U. S. 25 ; *Stone* v. *Mississippi*, 101 U. S. 814 ; *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746.

This important power must be extensive enough to protect the most retiring citizen in the most obscure walks, and to control the greatest and wealthiest corporations.  Its exercise must become wider, more varied and frequent, with the progress of society.  "This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the state."  *Thorpe* v.

*Rutland Railroad Co.* 27 Vt. 150. "It extends to the protection of the lives, health and property of the citizens and the preservation of good order and public morals." *Beer Co. case*, 97 U. S. 33. Its wide extent can be illustrated by instances of its actual exercise without direct compensation. Many of these instances are too familiar to need citations of authorities.

The sale of provisions has been regulated and abridged. The sale of intoxicating liquors has been prohibited. Licenses to manufacture liquors, have been recalled, and the manufacture prohibited, after much expenditure by the licencees. *Beer Co. case*, 97 U. S. 33. Lotteries chartered for a consideration paid, have been suppressed. *Stone's case*, 101 U. S. 814. Dealers in many articles of merchandise, are required to submit them to inspection by a public officer and pay the cost of inspection. Dealers using weights and measures must have them approved by a public officer, and pay the expense. The builder of buildings is often compelled to use more expensive material and adopt more expensive appliances, than he otherwise would. Safety for others may require it. The blameless sufferer from a contagious disease, is often compelled to leave home and friends and bear his pain in some place of quarantine. The infected places are disinfected and the infected clothing destroyed, all at the expense of the unfortunate owner. In the emergency of danger from fire, this power can tear down private buildings and otherwise destroy private property without compensation, to prevent a greater destruction from the conflagration. 2 Kent's Com. 339, notes. An instance something like the requirement of this statute, is the compelling the owners or occupants of buildings to keep the public sidewalks, in front of the building, clear from snow. Dillon on Mun. Corp. sec. 394.

When the party or property affected, though private in its character, yet has a public relation, the operation of the police power is still more extensive and frequent. The owners of theatres and halls are required to provide ample means of exit though to do so may involve expensive changes in the building. Hotel proprietors are compelled to provide fire-alarms, fire escapes, watchmen, &c. Carriers of passengers are peculiarly

subject to the exercise of this power. Steamboats must submit to inspections and pay the costs thereof. They must use such boilers and engines and carry such boats, etc., as may be prescribed. They may be required from time to time to discard old appliances and adopt and use new and more expensive appliances for safety. Railroads are constantly having imposed upon them additional duties with reference to safety of persons and property. The use of new inventions, in brakes, platforms, switches, signals, heating, lighting, etc., is often commanded, even though former expenditure is thereby made useless. "The state in the exercise of its police power may require reports, the numbering of the cars, the fixing and posting of rates, a slow rate of movement, the disuse of steam in cities, the ringing of a bell and the blowing of a whistle on approaching highways, the stationing of a flagman at a highway crossing, the lighting of the railroad in cities and villages." Pierce on Railroads, 462. Although the charter may have prescribed one kind of fence to be built by the railroad company, the legislature may afterward lawfully require another kind of fence. Pierce on Railroads, 463.

Neither is this police power confined to saving life or limb. It may protect business interests by prohibiting discriminations, by regulating tariffs, by enforcing facilities for the public. *Munn's case*, 94 U. S. 113. The interstate commerce act of congress, illustrates this proposition.

The case *State* v. *Noyes*, 47 Maine, 189, decided in 1859, is now generally considered too narrow and strict an interpretation. Broader views have prevailed since then.

From the above instances of the application of the police power, the Maine statute requiring the railroad company to care for and maintain highway crossings within its location, seems to be a moderate and ordinary exercise of a constitutional power.

Corporations derive their existence from the state and hence are subject to the state even more completely than individuals. Corporations created for public purposes and invested with large powers as railroad corporations are, can properly be required to do any reasonable thing and to assume permanently any reason-

able duty, which shall promise greater security from the dangers attendant upon the exercise of their powers. There must needs be a highway. The crossing at the railroad must be kept in repair. To permit any divided authority or responsibility as to the crossing would be dangerous. The railroad company would loudly remonstrate if the municipality were given the power to manage the crossing. The company needs the entire control for its own protection as well as that of its passengers. By operating its road it occasions the danger. It is not unreasonable that the railroad company should provide against the danger so occasioned. Such a requirement does not seem to be an "alteration, amendment or repeal" of the charter of the Boston and Maine Railroad Company. The company exercises all the powers and privileges it had before the enactment of the statute requiring this duty of maintaining crossings. The statute simply requires more care and greater security in such exercise. However the statute may affect the company or its charter, we think the company is subject to it. It follows that the principles announced in the case of the *P. & R. R. R. Co.* v. *Deering*, above cited, govern the case of the Boston and Maine Railroad Company as well as that of Orchard Beach Railroad Company.

The fourth exception is not urged; we have found no authority for the requested instruction. Such an apprehension of expense which may never be incurred, is too uncertain and indefinite to to be an element in estimating the damage to the company's property. There may be no accidents. There may be no unfounded claims made. None can be certainly anticipated. If the company cannot have compensation for increased liability to accidents, it should not have it for mere apprehension of expense in defending against groundless claims.

It will be seen that our answers to the questions raised by the exceptions, requires the exceptions to be overruled.

The motion to set aside the verdict as against evidence, has also been fully considered. It may be that the special findings particularly as to the width of the prescriptive way, are not according to the weight of the evidence on those points. However that may be, the majority of the court is of the opinion that

upon the whole evidence there is no reason to expect a larger award of damages, from another trial, and that the general verdict should stand.

*Exceptions and motion overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.