CLEVELAND, receiver, *v.* CITY COUNCIL OF AUGUSTA.

A railroad corporation which under its charter constructs its tracks across an existing public highway or street of a city, does so on the implied condition that it will yield to the reasonable burdens imposed by the growth and development of the country or the city, and where the public welfare demands a change of the grade of the highway or street, the railroad company must, at its own expense, make such alteration in the grade of its crossing as will conform to the new grade.

Argued June 15, — Decided August 10, 1897.

Complaint. Before Judge Callaway. Richmond superior court. April term, 1896.

*Ganahl & Ganahl* and *S. J. Simpson*, for plaintiff in error.
*M. P. Carroll* and *W. T. Davidson*, contra.

LITTLE, J. The railroad company, in the construction of its line of railroad in the year 1880, laid its track across a public highway outside of but near the then corporate limits of the city of Augusta. In 1882 the corporate limits of Augusta were by legislative authority so extended as to include the area over which said track crossed the highway. In 1893 the city undertook a public improvement for the purpose of protecting the city from overflows of the Savannah river, and determined during the course of such improvement to raise the level of the highway or street at the point where it was crossed or intersected by the railroad-track, inasmuch as said street was alleged to

| 102 | 233 |
| 111 | 693 |
| 102 | 233 |
| d119 | 815 |
| 102 | 233 |
| 128 | 298 |

be low and below a proper grade, causing, in times of an even ordinarily high river, the street at that point to become flooded and to be impassable, cutting off the western portion of the city over that street entirely, said street being the main thoroughfare to reach the manufacturing industries and what is known as Harrisburg and West End. In pursuance of its plans, the city constructed an iron bridge on the street across a certain canal, at a point about 100 yards east of the point where the railroad intersected the street, and then proceeded to raise the grade of the street west of said bridge, and after it had thus raised the grade on either side of the railroad-crossing, notified the receiver of the railroad company, hereafter referred to as the railroad company, to raise the grade of the railroad-track. The railroad company claimed that it did not at the time have the necessary money to raise the grade of said road, and also denied liability to pay the expense thereof. An agreement was then entered into, whereby the railroad company was to have the work done, the city pay the expenses, and the question of liability be submitted to and determined by the courts. It appears that the raising of the grade of the railroad-track where it intersected the highway involved an elevation of the track several feet for several hundred yards on either side of the approaches to said street. The authority of the city to make the improvement of the street is conceded. The sole question presented is, is the railroad company entitled to damages by way of compensation for so elevating its track and right of way as to conform to the new grade?

At common law, the rule is that where a highway is made across another one already in use, the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safety of the crossing must be erected and maintained by the person or corporation constructing and using the new way. 38 American & Eng. R. Cas. (Supreme Court of Tenn.) 676; 46 Md. 445; 49 Md. 269; 67 Ill. 118; 23 Wend. (N. Y.) 446; 1 Thomp. Neg. 328, 343; 3 Head (Tenn.), 523. In most of the American States, however, this common-law rule, so far as applicable to railroads and like companies, has been abro-

gated and superseded by special statutes. The adjudications. upon the relative rights of railroads and the public are in harmony in applying the common-law rule, declared as well by statute, that when the railroad constructs its track across a highway or street, it must make and maintain suitable crossings. They are largely in harmony, too, in holding that when highways are laid out across a railroad, it is the duty of the owner of the latter to construct proper crossings; but they are in conflict on the question as to whether such owners are entitled to damages by way of compensation for making such crossings, as well as to the measure of such damages in the respective jurisdictions where the right of the railroad to damages is recognized.

Prior to the decision of the case of Old Colony & Fall River R. Co. v. County of Plymouth, 14 Gray (Mass.), 155, it had never been judicially determined that a railroad corporation which has in the ordinary course of business, under an act of incorporation, built a road and had it in full operation, could recover damages for injuries occasioned by laying out public highways over it. In this case, Chief Justice Shaw said, that such a corporation is entitled to damages for land taken by the laying out of the public highway across its railroad, subject to its use for such road, and for the expense of erecting and maintaining railroad-signs and cattle-guards at the crossing, and of flooring the same, and of keeping it in repair; but not for any increased liability from accidents, for the increased expense of ringing the bell, or for its liability to be ordered by the county commissioners to build a bridge for the highway over its track.

In 76 Ill. 447, it was held, that "Corporations when brought into existence, except so far as may be otherwise provided in their charters or the general laws which enter into their charters, become liable to perform all the duties to the public that may be required of natural persons, to the extent that they are capable of performance, and they are entitled to protection in their rights to the same extent as natural persons." And, "Where long after the construction of a railroad a street was extended so as to cross the same, and the city passed an ordi-

nance requiring the railway company to make a safe and proper crossing by grading the approaches of the street at the crossing, there being nothing in the charter of the company imposing such duty, or any such duty imposed by any general law in force at the time the company was created: Held, that the company was not liable to this new burden any further than might have been required of an individual, and that as the whole burden was sought to be placed upon the company without regard to benefits, the ordinance was in violation of the constitution, and could not create any liability upon the company, and that the legislature itself could not impose such burden without making compensation."

In 21 Barb. (N. Y.) 513, it was held that the legislature could not, under the usual reservation to the legislature, in the charter of a railroad company, of the power to alter, modify or repeal it, pass a subsequent act requiring the railroad company to cause a proposed new street or highway, laid out by the commissioners of highways, to be taken across their track, and to cause all necessary embankments, excavations, and other work to be done on their road for that purpose at their own expense. This case, however, was subsequently overruled in 24 N. Y. 345, hereafter referred to.

In Minnesota (42 A. & E. R. Cas. 241), it was held, that upon the laying out of a public highway across the track and right of way of a railroad company, the latter is not entitled to compensation for providing and maintaining cattle-guards and sign-boards at the new crossing, such requirements being a legitimate exercise of the police power of the State; but it was further held that it was entitled to compensation for planking the roadway where it crosses the railroad-tracks and for the maintenance of the planking. In 121 Mass. 124, it is said: " A railroad corporation across whose road another railroad or highway is laid out, has the like rights as all individuals or bodies politic and corporate owning lands or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures upon the land or changes in its surface absolutely required by law or in fact necessary to be made by the

corporation injured, in order to accommodate its own land to the new condition"; and in Massachusetts and Maine it was ruled that the company was entitled to recover for lands taken by the laying out of the highway subject to use for railroad purposes. 42 A. & E. R. Cas. 254. The various cases allowing compensation, together with the varying measures of damages laid down, may be found in the following reports: 7 L. R. A. 121, and note; 23 A. & E. R. Cas. 51, and note; 32 Id. 276; 42 Id. 241; 51 Id. 525; 26 Pac. R. 394; 31 Pac. R. 736; 61 Mich. 507; 102 Mo. 633; 159 Mass. 283.

On the other hand, in 24 N. Y. 345, the court, overruling the decision in 21 Barb. 513, held: "Nor is there anything unlawful in obliging the railroad company to make the necessary excavations or embankments for taking the highway across the railroad. The disturbance of the surface of the ground which has rendered such work necessary, was effected by the railroad itself, and the reservation of legislative authority we may suppose to have been inserted for the purpose of obliging the companies to conform to such directions as subsequent legislatures should discover to be necessary for the public good or which should be required by public policy. The difficulty which arose out of the rule that the grant of corporate power for individual emolument created a contract between the corporators and the State, led to the reservation referred to; and this case presents a strong illustration of the wisdom of the legislative policy." The statute under which this decision was made expressly authorized the laying out of highways across the tracks of railroads without compensation.

In the Supreme Court of Ohio it was held: "Under a statute requiring railroad companies to maintain and construct crossings and approaches at public highways, a railroad is bound to construct and maintain a crossing where a street is laid out across its track, without compensation for the expense of such construction and maintenance." 50 A. & E. R. Cas. 150; in line with which are the following cases: 32 A. & E. R. Cas. 271; 20 Id. 16; 42 Id. 248; 17 Id. 608; 29 N. E. R. 1109; 166 U. S. 226; 32 Conn. 240. And it has been held in a number of cases, that when a highway is laid out by

proper authority across a railroad company's right of way, this is not such a taking of property as entitles the company to damages. See 20 A. & E. R. Cas., note on page 16. It is held, however, that the crossing must be so made as to occasion the least possible inconvenience to the railroad company. 46 Md. 425; 23 Minn. 167; 49 Mo. 480.

The ruling that the laying out of a highway across the right of way of a railroad is not such a taking of property as entitles the company to damages, proceeds upon the theory that land already taken for a public use may be taken by proper authority for other public uses; and when so taken, it is presumed that the second use is not inconsistent with or destructive of the former use. 11 N. J. Eq. 175; 16 Gray, 417; 105 Ill. 110; *Wood* v. *Macon & B. R. Co.* 68 *Ga.* 539; 112 Ill. 589; Mills Em. Dom. 143.

Whatever may be the true rule as to the right of a railroad company to compensation for the right of way over which a public highway is laid, it is clear, as said by the court in 45 Barb. 138, that where a railroad is laid in a public street, under a permissive grant to the company to use a portion of the street for that purpose, the company does not acquire the same unqualified title and right of disposition to the land occupied which individuals have in their lands. The only exclusive power conferred by such grants is that of using railroad-carriages, in the same manner as the grant of a stage-line confers, for the time being, the grant of a monopoly of using such stages for the transportation of passengers for hire on that route.

Our statute requires that all railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges, and make proper excavations or embankments, according to the spirit of the road laws. Statutes of similar import have been held constitutional as being a legitimate exercise of the police power of the State. The Supreme Court of Illinois, 29 N. E. R. 1109, says: "The only question is, whether the appellant is bound to construct and maintain the crossing without compensation, or whether

it should have been awarded damages for the expense of such
construction and maintenance, by the judgment of the court
below. Government owes to its citizens the duty of providing
and preserving safe and convenient highways. From this
duty results the right of public control over highways. Rail-
roads are public highways, and in their relations as such to
the public are subject to legislative supervision, though the
interests of their shareholders are private property. Every
railroad company takes its right of way subject to the right
of the public to extend the public highways and streets
across such right of way." 30 Ohio St. 604. In the separate
opinion in Chicago & A. R. Co. v. Ry. Co., 105 Ill. 388, it was
said: "Unless, therefore, every railroad corporation takes its
right of way subject to the right of the public to have other
roads, both common highways and railways, constructed across
its track whenever the public exigency might be thought to
demand it, the grant of the privilege to construct a railroad
across or through the State would be an obstacle in the way
of its future prosperity, of no inconsiderable magnitude." If
railroads, so far as they are public highways, are, like other
highways, subject to legislative supervision, then railroad com-
panies, in their relations to highways and streets which inter-
sect their rights of way, are subject to the control of the police
power of the State—that power of which this court has said,
"It may be assumed that it is a power coextensive with self-
protection, and is not inaptly termed the law of overruling ne-
cessity." 70 Ill. 191. The requirement embodied in section
8, that railroad companies shall construct and maintain the
highway and street crossings and the approaches thereto
within their respective rights of way, is nothing more than a
police regulation. It is proper that the portion of the street
or highway which is within the limits of the railroad right of
way should be constructed by the railroad company and
maintained by it, because of the dangers attending the opera-
tion of its road. It should control the making and repairing
of the crossing for the protection of those passing along the
street and of those riding on the cars. The grading of the
approaches and the planking between the rails and tracks

make it possible for men and trains to cross easily and quickly, and thus avoid collision with passing trains, thereby insuring their own safety and the safety of the persons and property upon the trains. The Supreme Court of the United States has said: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, . . . there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens." 97 U. S. 659. "Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking or damaging without just compensation of private property, or of private property affected with a public interest."

In 79 Maine, 363, in passing upon the constitutionality of a statute of this character, the court said: "The purpose of this statute was evidently to promote the safety of travelers both upon the railroad and the county way. In view of the nature of the ordinary steam-railroad, and the dangers necessarily attending its operation, and the onerous liability of the railroad company to its patrons and the public, it is clear that the company should have the whole control of all things necessary to be done within its location for any purpose, whether for the benefit of the company, or that of the public. It must practically have the exclusive possession of the land within the line of its location"; citing 78 Maine, 413. "It is of vital importance to those traveling by rail or upon the public road that the crossing should be properly constructed and kept in good order. These crossings require attention the same as other portions of the track, and are liable to constantly get out of repair. The sectionmen in the employ of the railroad are daily passing over the track, and would soon discover a defect in the crossing and remedy it. Not so with the road-supervisor; he seldom sees the crossing. . . The interest of the public as well as that of the railroad company requires that the latter should have an exclusive control of the crossings. If inexperienced road-supervisors were required to construct and repair these crossings, great loss of life and property would likely result from the negligent construction of or the failure to keep in good order the crossings. The purpose of the legislature in

placing this burden upon the railroad corporation was to secure the safety of the public travel and transportation."

The reasoning of the foregoing cases goes far in support of the proposition that the construction of crossings should be done under the direction and supervision of the railroads, but affords no support for the proposition that they should not be compensated.

The great fundamental principle underlying the validity of such statutes, and supporting adjudications rendered thereunder, is that every citizen or corporation must so use his or its property as not unnecessarily to injure another. Therefore where a railroad is empowered to cross a public highway, it is but just to impose upon the corporation the duty to construct and repair good and sufficient bridges or passages under or over the railroad, so that travel over the highway shall not be impeded, and the public safety not imperiled. Railroad corporations receive many compensations for all the burdens imposed upon them. The company pays nothing for its franchise; pays no tax upon it as a rule; its road crosses public ways and runs in places along such ways, without compensation to the town or county which paid for its easement to the original owner; may cross canals and navigable streams under some conditions, and this imposes burdens on other public interests; highways may be raised or lowered for its accommodation, thus affecting the grade of highways and often the convenience and safety of travelers.

Statutes requiring railroad companies to make proper crossings are founded on the most obvious principles of equity and justice. By laying its ties and rails and making its grade, the railroad renders a crossing necessary where no such necessity would otherwise exist. It is but requiring the railroad to so operate its property as not to injure the public in its property or otherwise.

By reason of their dangerous character, statutes regulating the speed at which they may run their trains, requiring the placing of bells on their locomotives, the ringing of such bells, the fencing of the track, the erection and maintenance of cattle-guards, sign-boards and gateways at crossings and the sta-

tioning of flagmen thereat, and the maintenance of such other like measures and precautions as are necessary to shield the public and its passengers from the dangers incident and peculiar to its operation, have been sustained as being a valid exercise of the police power of the State. Indeed, statutes requiring railroad companies to construct and maintain proper crossings and approaches, bridges, etc., at their own expense, rest upon the police power; otherwise, they could not, under all circumstances, be sustained. The Supreme Court of Illinois (29 N. E. R. 1109) has said: "The provisions of the act of March 31, 1874, sec. 8, requiring railroad companies to maintain and construct crossings and approaches at public highways, is a police regulation, and where railway lands are taken by a municipal corporation for street purposes, interruption to travel, or the cost and expense of constructing and maintaining such crossings, are not proper elements of damage. Requiring a railway company without compensation to construct and maintain street-crossings over its railroad, by a statute enacted for the public safety under the police power of the State, is not a taking or damaging of private property without just compensation." Of similar import is the case of Railroad Company v. Chicago, 166 U. S. 226. And in construing a similar statute and holding the same constitutional, and that it applied to a company whose charter provided that it was not to be altered, amended or repealed, the court said, that such statute did not impair the obligation of any contract with the company; that the power of the legislature to impose such burdens for the general safety is fundamental; that it was the police power, which must be sufficiently extensive to protect all persons and property. The court, in affirming the legislative power to impose uncompensated duties and even burdens upon individuals and corporations for the general safety, speaking with reference to the police power, says: "Its proper exercise is the highest duty of government. The State may in some cases forego the right to taxation, but it can never relieve itself of the duty of providing for the safety of its citizens. This duty, and consequent power, override all statute or contract exemptions. The State can not free any person or corporation

from subjection to this power. All personal or property rights must be held subject to the police power of the State"; citing 97 U. S. 25; 101 U. S. 814; 111 U. S. 746. In one jurisdiction, at least, such a statute has been treated as not resting on the police power; and it has been declared that a statute which imposes upon the company the expense of cattle-guards, fencing and other outlays to complete the approaches, besides the cost of maintaining them, is in conflict with the constitutional provision forbidding the taking of private property without just compensation, and is therefore unconstitutional and void. 61 Michigan, 507. The weight of authority and reason sustain such statutes as being a proper exercise of the police power; but the cases are at variance as to the extent of the uncompensated duties or burdens imposed. In Minnesota it is held, that the company is not entitled to compensation for providing and maintaining cattle-guards and sign-boards, but that it is entitled to compensation for planking the roadway where it crosses the railroad-tracks, and for the maintenance of the planking. 42 A. & E. R. Cas. 241. In another case it is held, that the company is entitled to recover the fair value of its land taken, the expenses of making and maintaining in repair the planking, paving, cattle-guards, fences, sign-boards, posts, gates and gate-house; but that the cost of operating the gates is not to be included in the verdict. 159 Mass. 283. In still another it is held, that the public authorities are required to build that part of the highway within the right of way which they would have been required to make had the railroad not been constructed. 42 A. & E. R. Cas. 248 (Supreme Court Neb.).

A proper interpretation of the statute will be made when the dividing line between the legitimate exercise of the police power and the taking or damaging of private property for public use is ascertained. The legislative will will not be interpreted as intending to infringe upon this great constitutional provision, where it has not in express terms so declared, and where the statute may have a full and reasonable operation without the limits of such principle. The statute has for its purpose the protection and safety of the public and of the

property of the railroads. It so polices their operation as to guard against the dangers incident to such institutions. Upon streets or highways crossed by it, or subsequently laid out, the railroad company must construct proper crossings (42 A. & E. R. Cas. 248; 13 Id. 608), and must alter, change or otherwise reconstruct such crossing whenever the public welfare demands. 32 Conn. 240. When the railroad company laid its track across the highway, it did so subject to the right of the public authorities to make such alterations or changes in the highway, either by lowering or raising the grade, widening, or otherwise improving the same, as the public safety and welfare might require. In doing so, the presence of the railroad necessitates a certain character of crossings and safeguards which otherwise would not exist; and with however much plausibility it might be argued that the public authorities should be required to do just such work as they would have to do did the railroad not exist, it is certain that the railroad company should bear the burden of such work as is made necessary by reason of the peculiar and dangerous character of its operation. The principle of the common-law rule is embodied in this statute. It is the railroad which makes the construction of a railroad-crossing necessary, whether the highway be laid out before or after the construction of the railroad. As was said by the court in 38 A. & E. R. Cas. 678: "There was the best of reason for requiring the company to bear all the expenses necessary in constructing and keeping up the crossing, . . so that the county would be injured as little as possible and have no greater burden imposed upon it in maintaining its public highway than it would have had if the railroad had never been constructed at all."

The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the State by reasonable regulations to protect the lives and secure the safety of the people; and herein is found the principle — so use your own property or so conduct yourself as not to unnecessarily injure or annoy others — which is the root from which the whole doctrine of the police power grows. To protect the health of the public, the sale of

provisions has been regulated and abridged, and dealers have been required to submit them to inspection by a public officer; in the interest of public morals, the sale of liquors has been prohibited, licenses to manufacture them have been recalled, the manufacture thereof prohibited after much expenditure by the licensees; lotteries, chartered for a consideration, suppressed; to secure the life and safety of the public, the builder is often compelled to use in his structure more expensive material and adopt more expensive appliances than he otherwise would; infected places are disinfected and infected clothing destroyed, all at the expense of the unfortunate owner; one who has been stricken with a fatal and contagious malady must repair to the quarantine-station; in the emergency of danger from fire, private buildings may be torn down and private property otherwise destroyed, without compensation, to prevent a greater destruction from the conflagration. 32 A. & E. R. Cas. 274.

As stated, the provisions of the statute are not repugnant to the constitutional provisions above referred to, but they are intended to coexist with and operate upon that class of cases in which, though property may be injuriously affected, it can in no sense be said that it is taken or damaged. It must be confined, however, within appropriate limits; otherwise the rule, though within itself just and equitable, may become arbitrary and oppressive, and the guide, by which the relative rights of the railroad and the public may be ascertained, lost. While the railroad company must build such crossings and approaches as the character of its property renders necessary for the convenience and safety of the public, and must bear just such burdens as the public authorities would not have had to bear had the railroad not been lying across the street, yet the railroad company is not bound to furnish the highway, nor under such circumstances is the power of the State to damage its property, in the construction or improvement of such highway, unlimited. Indeed, except in so far as being required to properly guard and protect its property without cost or inconvenience to the public, the railroad company, with respect to its property, stands on the same footing as any other property-

owner. Under the guise of the police power, property of corporations or individuals can not be confiscated. The same authority and reasoning that require the railroad company to so guard and use its property as to prevent it from becoming a charge on or menace to the safety of the public, will place such property on an equal footing with all other property, when the railroad company has complied with all reasonable police regulations. Thus, in those jurisdictions where statutes requiring railroad companies to construct and maintain suitable crossings at their own expense are upheld, damages are nevertheless allowed, where streets are projected and opened across the right of way of a railroad, for land taken belonging to such railroad as a right of way, the measure of compensation being the amount of decrease in the value of the use for railroad purposes caused by the use for purposes of a street. 23 A. & E. R. Cas. 51; 32 A. & E. R. Cas. 271; 166 U. S. 226; 29 N. E. Rep. 1109. No such element of damages, however, could arise in the present case, inasmuch as the grant to the company to use a portion of this highway upon which to lay its track does not vest in it the same unqualified title and right of disposition to the land occupied which individuals have in their lands. The only exclusive power conferred by such grant is that of using railroad-carriages upon and over such street, subservient to the right of the public to also use and travel the highway. 45 Barb. 138.

Our statute requiring railroad companies to keep in good order at their expense the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws, and prescribing the extent of such crossings, is a general law which has been of force in this State since 1838, applicable alike to all railroads. The line of railroad of the plaintiff in error was constructed subject to this general law. The rights and powers acquired by the corporation in this State were taken subject to its provisions. As has been before said, the statute is a legitimate exercise of the police power of the State. The duty which it imposes is a continuing one. 29 A. & E. R. Cas. 604; 35

Id. 251; 10 Id. 328; 3 Elliott on Railroads, §1111; 28 N. W. Rep. 4; 59 Am. Rep. 313. It has been held, under like provisions, that it was the duty of a railroad company; though its track was originally constructed at grade with a public highway, to construct a bridge or viaduct whenever the same might become necessary. 35 A. & E. R. Cas. 251. And that, although a crossing might have been adequate when constructed, yet if by reason of increase of business of the railroad or travel on the street it became dangerous or seriously obstructed travel on the street, the company was bound to provide some other mode of crossing, as by carrying the street under or over the track. 59 Am. Rep. 313, and authorities cited on page 316. Under such a statute, the corporation does not discharge its duty by making such a crossing as to provide for the wants of travelers at the time of the construction of the road. If by the increase of population in the neighborhood, or by reason of the increasing use of the highway, the crossing, which was at the outset adequate, becomes inadequate, it is the duty of the railroad corporation to make such alteration as will meet the present needs of the public who have occasion to use the highway. 10 A. & E. R. Cas. 328. To same effect, see Pierce on Railroads, 457, and authorities cited; 3 Elliott on Railroads, §1111; 32 Conn. 240. The duty being a continuing one, it is not fulfilled by putting the street at the time of building the railroad in such condition as not to impair or interfere with its use at that time, nor by maintaining it in such condition as would have accomplished that end had the state of things originally existing continued. The duty has reference to future exigencies, and requires the railroad company from time to time to put the street in such a condition as changed circumstances may render necessary. 28 N. W. Rep. 4. The duty of the railroad company to construct and maintain, at its own expense, suitable crossings at the intersection of the railroad with highways, applies as well to highways laid out and opened after the construction of the railway as to those existing prior to its construction. 29 N. E. Rep. 1109; 166 U. S. 226; 13 A. & E. R. Cas. 608; 42 A. & E. 248.

We think it follows as a logical conclusion from the principles of law above announced, that when the corporation constructed its track across the public highway in question, it did so subject to the right of the public authorities to require such changes in the crossing from time to time as the public safety and welfare might demand, or to readjust its track and crossings to a change of grade of the street, demanded for the safety and convenience of travelers upon the highway, and that in doing so the expense incurred is involved in its compliance with a police regulation of the statute; and we know of no law whereby a corporation or natural person can recover damages on account of being compelled to render obedience to a public regulation designed to secure the common welfare. Chicago & A. R. Co. v. Joliet, L. & A. Ry. Co., 105 Ill. 388.

*Let the judgment of the court below be affirmed. All the Justices concurring.*