## MIXON *v.* SAVANNAH AND ATLANTA RAILWAY.

The provisions of § 2673 of the Civil Code of 1910 " apply to a railroad company where the public road is crossed only by an excavation made for the purpose of laying therein, across such public road, a railroad-track of the company, and before any railroad-track has been laid and before the work of constructing the railroad is completed across such public road."

No. 2653.   FEBRUARY 16, 1922.

Question certified by Court of Appeals (Case No. 11838).

*W. L. Phillips, W. T. Revell,* and *Frank Hardeman,* for plaintiff.

*Hitch, Denmark & Lovett* and *Phillips & Abbot,* for defendant.

HILL, J. The Court of Appeals desires instruction from the Supreme Court on the following question involved in this case: " Section 2673 of the Civil Code (1910) reads as follows: ' All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws.' See Ga. Laws 1838, p. 216; Cobb's Digest, 955.

Do the provisions of this section apply to a railroad company where the public road is crossed only by an excavation made for the purpose of laying therein, across such public road, a railroad-track of the company, and before any railroad-track has been laid, and before the work of constructing the railroad is completed across such public road?"

While the question asked by the Court of Appeals does not expressly assert that the excavation was made by the railroad company, or by one as agent for the company, yet we are of the opinion that, properly construed, the question means that the excavation was made by the railroad company itself or some one authorized to do so for it; and the question will be answered on that assumption. See, in this connection, Civil Code (1910), § 4415 (4); *Atlanta &c. R. Co.* v. *Kimberly,* 87 *Ga.* 161 (4), 167 (13 S. E. 277, 27 Am. St. R. 231).

The section of the code under consideration was codified from the act of 1838 (Acts 1838, p. 216). By reference to that act it will be observed that the caption is as follows: "An act to amend the road laws of this State, so far as to cause to be kept in good repair all places where any railroad which now is or may hereafter be chartered crosses, or may cross, any public highway in this State." The first section of the act provides that "It shall be the duty of all railroad companies, which now are or may hereafter be incorporated, . . to put and keep in good traveling order and repair the public roads, at such point or points where the same may be crossed by their respective railroads," etc. It seems, therefore, both from the caption and the body of the act, that the purpose of the legislation was "to put and keep in good traveling order and repair the public roads, at such point or points where the same may be crossed by their respective railroads." Nothing is said in the act or in the caption thereof with reference to the actual running of trains or laying of rails before the public roads should be kept in good order.

In the case of *Cleveland* v. *City Council of Augusta,* 102 *Ga.* 233 (29 S. E. 584, 43 L. R. A. 638), the exact statute here under review was considered and commented on in the well-considered opinion delivered by Mr. Justice Little in that case; though the exact question involved in that case was different from the one under review. Among other cases cited by the learned Justice

in that case with approval was Boston &c. R. Co. *v.* County Comm'rs, 79 Me. 386, 392 (10 Atl. 113), where it was stated that the Supreme Court of Maine, in passing upon the constitutionality of a statute similar in character to the one under review, said: " The purpose of this statute was evidently to promote the safety of travelers both upon the railroad and the county way," etc. And in the case of Chicago &c. Ry. Co. *v.* Chicago, 140 Ill. 309, 317 (29 N. E. 1109), the Supreme Court of Illinois said: " The requirement, embodied in section 8, that railroad companies shall construct and maintain the highway and street-crossings and the approaches thereto, within their respective rights of way, is nothing more than a police regulation. It is proper that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the *making and repairing* [italics ours] of the crossings for the protection of those passing along the street and of those riding on the cars." In the *Cleveland* case, supra, it is said that " Statutes requiring railroad companies to make proper crossings are founded on the most obvious principles of equity and justice. By laying its ties and rails and making its grade, the railroad renders a crossing necessary where no such necessity would otherwise exist. It is but requiring the railroad to so operate its property as not to injure the public in its property or otherwise."

In the case of Palatka &c. R. Co. *v.* State, 23 Fla. 546 (3 So. 158, 11 Am. St. R. 395), it was held that " A grant of power to a railroad company to make a new road or open a new way across an existing highway, in the absence of an express provision to the contrary, leaves the railroad company under obligation to leave every highway it crosses in a safe condition for the use of the public, and to cause as little injury as possible to the old highway."

In 22 R. C. L. 887, § 134, the rule is laid down as follows: " A grant to a railroad company of the right to construct its road along, upon, or across, or to use, an existing highway, in the absence of express words to the contrary, is not to be construed as a power to destroy such highway. It can not so construct the road as to block the highway, so that it can not be used by the public, and while trains are not passing over it, or the company

is not otherwise properly using the track. . . The principle that one who unlawfully interferes with a highway creates a nuisance and is liable in damages to one who suffers a special injury, applies to a railroad company which, though authorized to construct its road along or across a street or highway, exceeds its authority or fails to exercise a proper degree of care in such construction. . . A railroad so constructing its road at a crossing of a highway as to make it dangerous to travelers is liable for an injury occasioned thereby."

From the foregoing authorities, and others which might be cited to the same effect, a railroad company operating under its charter with the right of eminent domain has no more right to make an excavation across a public highway before it begins the operation of its trains, and to leave the excavation in an open, exposed, and dangerous condition for the public who traverse the public highway, than it would have to do so after the road is completed and the trains are in operation on said railroad and over said crossing. The manifest purpose of the legislature was to protect the traveling public while passing over the highways of the State against the negligence and carelessness of a railroad company both before and after the operation of its trains, but while exercising the powers under the charter which had been granted by the legislature. The road laws provide that the crossings shall be kept in a safe condition, safe to the traveling public over the highways of the State; and this is so regardless of whether trains are being operated over the road or not.

From the foregoing we conclude that the question propounded by the Court of Appeals should be answered in the affirmative.

*All the Justices concur.*