PORTLAND AND ROCHESTER RAILROAD COMPANY

*vs.*

INHABITANTS OF DEERING.

Cumberland. Opinion December 22, 1885.

*Railroads. Crossings. Land damages. Constitutional law. Evidence.*

In assessing damages to be recovered by a railroad corporation against a town for its land taken by locating town ways across its track, the jury may take into consideration, in order to ascertain present value, not only the use which the railroad now makes of its located limits at the crossings, but what use it may reasonably be expected it will in the near future make of the same.

It is not an unconstitutional exercise of legislative power to require a railroad corporation to build and maintain highway crossings laid out over its track, so far as such crossings are within its located limits, although the

law imposing such burden was enacted since the railroad was built, the company being subject to the general laws of the state in existence when its charter was granted and such as should be thereafter passed.

Damages are not recoverable, by a railroad company against a town which has laid out ways over its track, for the interference and inconvenience occasioned to its business by the opening of the new ways, nor for any increased risks or increased expense in running its trains caused thereby.

It is admissible for witnesses, who have competent judgment and understand the elements of the question, to testify to their opinion of the damages sustained by a railroad corporation for having a highway located over its track.

This was a petition by the Portland and Rochester Railroad Company for increase of damages on account of certain town ways laid out across its track. The case was heard by a sheriff's jury presided over by a commissioner appointed by the county commissioners. At the hearing the petitioners' counsel noted certain exceptions to the rulings of the commissioner, and upon the filing of the verdict and report of the commissioner in the Supreme Judicial Court the petitioner filed a motion in writing to set aside the verdict, because, among other reasons, of the rulings of the commissioner which are sufficiently stated in the opinion.

The case came to the law court under the provision of Stat. 1880, c. 242. The report states that the party filing the motion did not agree to an adjudication by the court, for the reason that it believed that the questions could be more satisfactorily presented upon report than by exceptions, and therefore reported the case to the law court for judgment upon the law and the facts. The order of the law court of " exceptions sustained " relates to one of the exceptions to the ruling of the commissioner.

*William L. Putnam*, for the plaintiff.

By various acts of legislation, the railroad corporation is obliged, not only to build and maintain so much of the way as is within the limits of its railroad, if at grade, as in the case at bar, but also, inasmuch as the road is laid out at grade, to do the following things : First. By the provision contained in the present Revised Statutes, c. 51, § 75, to delay running its trains to the low speed of six miles per hour. Second. By § 33, to

the necessity of maintaining signs. Third. By § 34, to the order of municipal officers of the town which laid out the way, to erect gates or maintain flagmen ; and Fourth. To the necessity of fencing across the location, or otherwise preventing the access upon its track of cattle and persons from the way laid out.

Part of these things were imposed upon railroad corporations, undoubtedly in the exercise of the police power of the state. So far as they were the exercise of the police power of the state, corporations were compelled to observe them with reference to all ways existing when the several statutes requiring these things were enacted, and to do this, without receiving compensation ; but aside from the mere matter of the obligation to construct and maintain the way within the limits of the location, which is expressly imposed upon the corporation, we believe there is no statute, which either denies or affirms that all these matters may or may not be taken into consideration in determining the damages which railroad corporations are entitled to recover by reason of the laying out of new ways.

Therefore it will be observed, the question is not at all the question of the police powers of the legislature, or of the powers of the legislature under the provision subjecting corporations to the general laws of the state ; but only a question whether, with reference to damages, the same rule applies to railroad corporations which applies to individuals, and whether they are not, like individuals, entitled upon the consideration of damages to have allowance made for all the existing circumstances and reasonable probabilities, arising either out of the natural condition of things, or out of the condition of things existing by reason of the impositions of the statutes.

In *Old Colony & Fall River Railroad Co.* v. *County of Plymouth*, 14 Gray, 155, the court held upon general principles, that a railroad corporation situated as the petitioner's, was entitled to some damages.

The reasoning of the court in *Ford* v. *The County Commissioners*, 64 Maine, 408, clearly assumes that the owner of a right of way may be entitled to damages.

Being entitled to damages, we claim that the same rule is to

be applied to us as to any other person or corporation; that as in case of such other persons or corporations, the town having entered upon our exclusive possessions and laid its way across part of our location, we are entitled to be compensated for all the incidents arising therefrom. *Bangor & Piscataquis Railroad Co.* v. *McComb*, 60 Maine, 290.

The jury were expressly confined to considering the value of the strips fifty or more feet wide on each side of the main track, in their existing unused condition, and to estimate them precisely as they would estimate them if they were parts of desolate sand plains, removed from all inhabitants, used only for the main track of the road and with no prospect of any possible use for any other purpose.

We claim that this was a clear violation of law and of justice. *Pinkham* v. *Chelmsford*, 109 Mass. 225 ; *Boom Co.* v. *Patterson*, 98 U. S. 403 ; *Bangor & Piscataquis Railroad Co.* v. *McComb*, 60 Maine, 290 ; Pierce on Railroad Law, edition of A. D. 1881, 217 ; *Eastern Railroad Co.* v. *The Boston & Maine Railroad*, 111 Mass. 125 ; *Lake Shore & Michigan Central Railroad Company et als.* v. *The Chicago and West Indiana Railroad Company*, 2 Am. & Eng. Railroad Cas. 452.

Petitioner was refused by the commissioner any allowance for cattle guards, fences and signs warning travelers ; which refusal does not appear in harmony with *Old Colony & Fall River Railroad Company* v. *County of Plymouth*, 14 Gray, p. 155, nor with the expressions of the court in *Massachusetts Central Railroad Company* v. *Boston, Clinton & Fitchburg Railroad Company*, 121 Mass. p. 124.

*Nathan and Henry B. Cleaves*, for the defendants.

The requested instruction which was based upon the chance or probability that sidings or additional tracks might be placed at this locality was properly refused.

In *Moulton* v. *Newburyport Water Co.* 137 Mass. 167, the petitioner attempted to prove that the lands taken by the respondent were admirably adapted to form, at slight expense, a storage basin for water, and offered to prove the value upon

this basis. The court say : " The damages must be measured by the market value of the land at the time it was taken, not its value to the petitioners or the respondent, not the value it might have under different circumstances from those then existing. The petitioners were not entitled to swell the damages beyond the actual fair market value of the land at the time, by any consideration of the chance or probability that, in the future, authority might be acquired by legislation or purchase, to carry the water in pipes to neighboring towns. . . . The value for these special and possible purposes is not the test, but the fair market value of the land in view of all the purposes to which it was naturally adapted. "

The court say in *Worcester* v. *Great Falls Manufacturing Co.* 41 Maine, 163 : " In actions *ex delicto*, the damages to be awarded by a jury are a compensation, recompense or satisfaction to the plaintiff, for an injury actually received. " See *Bangor and Piscataquis R. Co.* v. *McComb*, 60 Maine, 290 ; 100 Ill. 21 ; *Cobb* v. *City of Boston*, 109 Mass. 438 ; *Massachusetts Central Railroad Co.* v. *Clinton and Fitchburg Railroad Co.* 121 Mass. 124.

The railroad " is not entitled to damages for the interruption and inconvenience occasioned to its business, nor for the increased liability to damages from accidents, nor for increased expense for ringing the bell, nor for the risk of being ordered by the county commissioners, when in their judgment the safety and convenience of the public may require it, to provide additional safeguards for travellers crossing its railroad. " *Mass. C. R. Co.* v. *C. & F. R. Co.* 121 Mass. 121 ; *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora R. R. Co.* 44 American Reports, 799 ; *State* v. *Noyes*, 47 Maine, 189 ; *Thorpe* v. *R. & B. R. Co.* 27 Vermont, 142 ; *State* v. *New Haven and Northampton Co.* 43 Conn. 351 ; *Richmond F. and P. R. R. Co.* v. *City of Richmond*, 96 U. S. 521 ; *P. S. & P. R.* v. *B. & M. R.* 65 Maine, 122 ; *Wilder* v. *M. C. R.* 65 Maine, 332 ; Boston and Albany Railroad Co. Appellant, 70 N. Y. 569 ; same, 52 N. Y. 510.

The testimony of witnesses giving their opinion as to damages was properly admitted. *Shattuck* v. *Stoneham Branch R. R.* 6 Allen, 115; *Snow* v. *Boston & Maine R.* 65 Maine, 230; *Swan* v. *County of Middlesex*, 101 Mass. 173; *Whitman et al.* v. *Boston & Maine R.* 7 Allen, 313.

PETERS, C. J.    The town of Deering laid out two of its new ways over the track of a railroad company, and the question before a sheriff's jury was as to the damages sustained by the company for the easements taken.    The commissioner presiding at the hearing instructed the jury that they were simply to estimate the natural and actual direct damages sustained by reason of the crossings, regard being had to the use which the crossings were put to, namely, town ways; but that, in estimating such damages they should not consider the mere probable use in the future to which the land taken might be put by the railroad.

We think the latter branch of the instruction was erroneous. It too closely qualifies or construes the general rule.    The jury, in order to decide what the damages were, should have been allowed to take into consideration, not only the use which the railroad was then making of their land, but the use which in all probability it would thereafter make of it.    The error, no doubt, occurred from the commissioner having another principle in mind, which he was endeavoring to inculcate correctly to the jury, and that is, that prospective and speculative damages are not recoverable.    But a distinction is to be observed between what land may be worth in the future and what it is now worth in view of the future.    And as no man can foresee the future with any certainty, we are allowed to base calculations to some extent on the reasonable probabilities of the future.

There is a vast amount of land which is useless, unproductive, and costly to keep, and valuable only for the use which the future is quite sure to bring to it.    If the railroad is not likely to make any more extended use of the land than it now does, the damages would be one sum, while if it be sure or in a high degree probable that it will soon make a greater and more

beneficial use of the land, the damages may be another sum. And so it is a general principle affecting such questions, that if the future use of land will in all probability be greater and more valuable than its present use, such probability may be an element to be received into the calculation to establish present value. Property is more valuable on a rising than on a stationary market.

The principle, however, has not expansive tendencies. It is not what use the railroad may possibly make — likely as not, make — of the land in the future, nor even what need it may probably have for it at some uncertain and far off day. It is the near, immediate future that may influence; the uncertain, indefinite, doubtful future can not. The doctrine is to be carefully applied. The subject itself does not admit of exact limits. Supposed future value is by no means to be taken as present value. It is an element only, among other considerations, which may afford light upon the question. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. The general idea is safely expressed in *Boom Co.* v. *Patterson*, 98 U. S. 403, where it is said : " The compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the near future. " And the authorities are generally to the same effect, the one most fitting the question of the present case being *Railroad* v. *McComb*, 60 Maine, 290.

We think all other matters were delivered by the commissioner to the jury correctly and clearly. One point taken by the company, however, deserves especial consideration. The jury were instructed not to allow to the company, in the assessment of damages, any of the expense which will be incurred by them in building and maintaining so much of the new ways as are within the limits of their own location. The statute (R. S., c. 51, § 38,) lays that burden on the railroad corporation. The railroad is obliged to build and maintain these crossings at its own expense. But the company contends that, inasmuch as the statute was passed after their charter was granted, it would be

unconstitutional to apply its provisions to highways not in existence when their road was built.

By an amendment of the company's charter, accepted by them, it was provided that " the company shall be subject to the general laws existing in the state, or which may be hereafter passed by the state. " Pr. Laws, 1853, ch. 180. (Webb's Railroad Laws, Maine, 497.) See Con. Maine, Art. 4, part 3, § 14. One of those laws is that a railroad charter, such as this, may be amended or altered by the legislature.

The question, therefore, is whether, in view of the power thus reserved to the legislature, the statute relating to railroad crossings, as affecting this railroad in this instance, is or not constitutional. It is impossible to lay down any exact rule as to the lawful extent of the exercise of this reserved legislative power, and each case depends largely on its peculiar facts. But it is universally admitted that the power of alteration and amendment is not without limit. The alterations must be just and reasonable. The vested rights of property of corporations must be respected. The power should be confined to reasonable amendments regulating the mode of using and enjoying the franchise granted, which do not defeat or essentially impair the object of the grant. Pierce R. R. 459, and cases; Cool. Con. Lim. * 710, and cases.

Under any of the current definitions of this power of amendment, we think the statutory provision under discussion should not be regarded as an unreasonable exercise of such power. Railroad corporations, especially under present laws, receive many compensations for all the burdens imposed on them. The company pays nothing for its franchise; pays no tax upon it; may take a grant under general laws without recourse to the legislature; its road crosses public ways and runs in places along such ways, without compensation to the town which paid for its easement to the original owner; may cross canals and navigable streams under some conditions ( and this imposes burdens on other public interests) ; highways may be raised or lowered for its accommodation ( thus affecting the grade of highways and often the convenience and safety of travelers ) ; railroads to a reasonable extent may occupy highways with their trains; and other privileges and accommodations are accorded.

By building and maintaining the town crossing within its own located limits, the railroad company has a control of it — as it should have — and can shape it as best for its own needs, and that is some compensation. Instead of the legislature allowing, as it no doubt might, the right of passing over a railroad in all places where a passage could be effected without injury to the road, it confines the right to a few places — to the public roads. The law even forbids a person walking or standing on a track.

Another reason why the statutory requirement can not be deemed unjust, is, that it could not have been in the mind of the legislature or of the company, when the charter was granted, that so much of the public power was to be surrendered as the argument for the company assumes. Had the present statute been then in existence, it would not have been complained of as unreasonable. Railroad law was at that date in its infancy. Neither party knew what provisions for the preservation of all public rights and interests were needed. They were not inserted in the charter, nor were they then to be found in the statutes of the state. The charter was general, and the location of the line most indefinitely stated. While details were largely omitted, there must have been an unwritten, unexpressed understanding — an implication — that the charter should be subject to all reasonable legislative control. Since then the law has become better defined. The powers and privileges of railroads have been both curtailed and increased. Upon the whole, the legislative treatment of them has been reasonable and just. While the reserved power in this instance may not be deemed strictly a part of the police power of the state, it is something at least akin to it.

The tendency of the authorities sustain these views, and in some of the cases precisely the same question as arises here has been discussed and decided adversely to the railroad. Cool. Con. Lim. * 577, and discussion in note ; Pierce R. R. 457, and cases. in note ; *Chapman* v. *Railroad*, 37 Maine, 92 ; *Norris* v. *Railroad*, 39 Maine, 273 ; *Bangor O. and M. R. R. Co.* v. *Smith*, 47 Maine, 34 ; *Railroad Commissioners* v. *Railroad*, 63 Maine, 269 ; *Albany Northern R. Co.* v. *Brownell*, 24 N. Y. 345 ;

*People* v. *Railroad*, 70 N. Y. 569; *English* v. *Railroad*, 32 ·Conn. 240. A contrary decision, however, was made in *Detroit* ·v. *Plank Road Co.* 43 Mich. 140. If this result is possibly in some degree inconsistent with the case of *State* v. *Noyes*, 47 Maine, 189, decided in 1859, it is because that was a strict decision, and the law has made some advancement since that time.

It is not questioned by the town that some damages are recoverable by the railroad; and such must be the law. But damages are not assessable for the interruption and inconvenience occasioned to the business of the railroad by the opening of the new highways, nor for increased expenses nor increased risks in running their trains occasioned thereby. Those are matters clearly of police- regulation, damages for which would be too vague and uncertain for calculation. The claim is illogical if ·not unjust. *Mass. Cent. R. R. Co.* v. *Railroad*, 121 Mass. 124.

It was ruled that witnesses could testify to their opinions of :the amount of damages that are sustained by the easements taken. It is presumed that the witnesses were, from their experience and observation, competent to express their judgments upon :the question, and that they understood the elements upon which the question was based. We think the testimony comes within .the limits which renders opinion-evidence admissible.

*Exceptions sustained.*

VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.

WALTON, J., did not sit.