## LAKE ERIE & WESTERN RAILROAD COMPANY ET AL. *v.* SHELLEY ET AL.

[No. 20,383. Filed May 24, 1904.]

HIGHWAYS.—*Sufficiency of Report of Viewers.*—Where viewers appointed to locate a new highway report to the board of county commissioners under §6744 Burns 1901, §5017 R. S. 1881 and Horner 1901, and in their report say: "We met as directed in the order hereunto attached, and made a part hereof, and, after being duly qualified as appears therein, proceeded to view such proposed highway in the manner as by law prescribed, which by routes and bounds and course and distance is as follows, to wit: The said proposed highway to be thirty-two feet in width and commences at the place stated in the order attached hereto, and runs along, upon, and over the same route as is stated in said order, and more particularly described in the petition for said road; said proposed road to be about one mile and one-quarter in length, and we are of the opinion that said highway would be of public utility," and such report is signed by the viewers, and the order by the commissioners to the viewers contains a descripiton of the proposed highway, the report of the viewers is sufficient. *pp. 38–40.*

SAME.—*Located Across Railroad Tracks.*—Under the statutes of this State, §5153 Burns 1901, §3903 R. S. 1881 and Horner 1901, subdiv. 5, a railroad company acquires its right of way subject to the right of the State to extend public highways and streets across such right of way, and subject to the condition that it must place, keep safe, and maintain all highway crossings regardless of whether the highway was established before or after the road was built, and it is not entitled to recover compensation therefor. *p. 41.*

Lake Erie, etc., R. Co. *v.* Shelley.

APPEAL AND ERROR.— *What Brief Shall Contain.*—Under Supreme Court rule twenty-two, clause five, providing that appellant's brief shall contain so much of the record as presents the exception relied on, where appellant, complaining of the ruling of the court sustaining an objection to a question asked a witness as to his opinion, failed to set forth in his brief that the witness has shown his competency, or to set out the testimony of the witness, the assignment of error will not be considered. *p. 47.*

EVIDENCE.— *When Court on Appeal Will Presume Competency of Witness was Established.*—Where appellant complains of the action of the court in refusing to allow a witness to give an opinion, and the appellee, in his brief, asserts that the witness had not shown his competency, and this statement is not denied by appellant, the court will presume that the competency of the witness was not established. *pp. 47, 48.*

From Henry Circuit Court; *W. O. Barnard,* Judge.

Petition by Ambert W. Shelley and others for location of public highway was filed before board of county commissioners, where the Lake Erie & Western Railroad Company and others remonstrated for damages and on the ground that same was not of public utility. It was appealed from there to circuit court. From the circuit court the Lake Erie & Western Railroad Company appealed to the Appellate Court, which court transferred the same to the Supreme Court under subd. 2, §1337j Burns 1901. *Affirmed.*

*J. L. Rupe, L. P. Newby, W. A. Brown, E. H. Bundy* and *J. M. Morris,* for appellants.

*J. H. Jones* and *F. C. Gause,* for appellees.

MONKS, J.—Appellees petitioned for the location and opening of a public highway across the rights of way of the two appellant railroad companies and the lands of appellant William Hume and others. Viewers were appointed, who filed their report with the auditor. Each appellant filed a written motion to set aside the report of the viewers in said cause, "for the reason that the proposed highway is not sufficiently described in said report, and for the reason that said report does not describe the proposed highway." These motions were overruled by the board of commission-

ers, and appellants each filed a remonstrance on the grounds that the proposed highway was not of public utility, and for damages. Viewers were appointed, who filed a report that said proposed highway would be of public utility, and against the claim of each appellant for damages. The board of commissioners thereupon made an order establishing said proposed highway. Each of the appellants appealed from said judgment to the court below, where the Lake Erie & Western Railroad Company renewed its written motion to set aside the report of the first viewers, which had been overruled by the board of commissioners. The court overruled said motion, to which ruling said appellant excepted. A trial of said cause resulted in a verdict in favor of appellees and against appellants on the question of public utility and damages, the only issues in the case. Each appellant filed a separate motion for a new trial and the motions were overruled and final judgment rendered in favor of appellees.

The errors assigned call in question the action of the court in overruling the motion of the Lake Erie & Western Railroad Company to vacate the report of the first viewers, and the overruling of each of the motions for a new trial.

Section 6744 Burns 1901, §5017 R. S. 1881 and Horner 1901, provides: "Such viewers, or a majority of them, shall make a report of their proceedings at the ensuing session of the board of commissioners of the county in which such location, change or vacation may be made, giving a full description of such location, change or vacation, by metes and bounds, and by its course and distance; except that in case of the vacation of a road, or any part thereof, such description only as will designate it clearly shall be required."

The transcript shows that the first viewers "on the 19th day of March, 1901, filed with the auditor of said county their report, which said report is herewith transmitted." Immediately after this entry, and as a part thereof, there

appears in the transcript a copy of the order to view said road, signed and certified by the auditor; the oath of said viewers signed and sworn to by them before the auditor; and the report of the said viewers signed by them. The last paper, denominated "road viewers' report," reads as follows: "To the honorable board of commissioners of Henry county, Indiana. We, the undersigned viewers, who were appointed by your honorable body at your regular March term, 1901, to view a proposed highway as petitioned for by Ambert W. Shelley, et al., have discharged the duty assigned us, and submit to you the following report to wit: We met as directed in the order hereunto attached, and made a part hereof, and, after being duly qualified as appears therein, proceeded to view such proposed highway in the manner as by law prescribed, which by routes and bounds and course and distance is as follows, to wit: The said proposed highway to be thirty-two feet in width, and commences at the place stated in the order attached hereunto, and runs along, upon, and over the same route as is stated in the said order, and more particularly described in the petition for said road; said proposed road to be about one mile and one-quarter in length. And we are of the opinion that said highway would be of public utility. J. O. Mendenhall, F. P. Modlin, W. M. Bailey, viewers."

Said report refers to the "order to viewers," and makes it a part of said report; and said order to viewers, their oath and report, are contained in one entry of the proceedings of the board of commissioners, and must be read and construed as one instrument. In the "order to viewers" referred to, the location of the proposed road is described as follows: "Commencing at the point of intersection of the New Castle and Dublin pike with the half-section line running north and south dividing the east half of section twenty-four, township seventeen north, of range ten east, from the west half of said section in Henry township, Henry county,

Indiana, running thence north along said half-section line
to the south line of section thirteen, township seventeen
north, of range ten east in said county, and running thence
north along the half-section line dividing the east half of
section thirteen, township seventeen north, of range ten east
from the west half of said section, to the point of inter-
section of said half-section line with the New Castle and
Hagerstown pike in Henry township, Henry county, Indi-
ana." This description, when read as a part of said report,
is clearly sufficient. *Campbell* v. *Fogg* (1891), 132 Ind. 1;
*Mossman* v. *Forrest* (1866), 27 Ind. 233. It follows that
the court did not err in overruling said motion to vacate the
report of the first viewers.

Counsel for the railroad companies insist that the ver-
dict of the jury against them on the question of damages
was not sustained by sufficient evidence, and was contrary
to law. This contention is based upon the statement in
their brief that they proved by competent witnesses that it
will cost the Lake Erie & Western Railroad Company to
put in necessary crossings and approaches, if the proposed
road is established, $175.52, and that it will cost the Pitts-
burgh, Cincinnati, Chicago & St. Louis Railway Company
to construct and maintain crossings where the proposed
road crosses its right of way $501.25, and that there was no
evidence to contradict or impeach this testimony in any
way, and nothing to show that said railroad companies, or
either of them, would be benefited in any manner by the
establishment of said proposed highway. Said railroad
companies contend that under such circumstances each was
entitled to damages, and, as the jury did not assess or allow
any damages, the verdict is contrary to law. Conceding,
without deciding, that there was no evidence to contradict
or impeach said testimony in regard to the expense of con-
structing and maintaining said crossings, and that there was
nothing to show that said railroad companies or either of
them would be benefited by the establishment of said pro-

posed road, as insisted by said appellants, have they any right to complain of the failure of the jury to allow any damages for the expense of constructing and maintaining said crossings?

Under the statutes of this State it is the duty of all railroad companies to construct and keep in safe and good condition all highway crossings, and this duty is the same whether the highway was established before or after the railroad was built. §5153 Burns 1901, §3903 R. S. 1881 and Horner 1901, subd. 5; *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276, 278, and cases cited; *Chicago, etc., R. Co.* v. *State, ex rel.* (1901), 158 Ind. 189, 191-193, and authorities cited; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 240, 241, and authorities cited; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510, 517-521, and authorities cited. It is clear from our statute and the cases cited that a railroad company acquires its right of way subject to the right of the State to extend public highways and streets across the same, and subject to the condition that it must place, keep and maintain all highway crossings, regardless of whether the highway was established before or after the road was built, in such condition as not unnecessarily to impair the usefulness of the highway, and "so as not to interfere with the free use" thereof, and "in such a manner as to afford security for life and property." Laws requiring railroad companies to construct, maintain, and keep in a safe condition all highway crossings are passed in the exercise of the police power, and are constitutional, although enacted after the railroad was built. Elliott, Railroads, §1102; *Portland, etc., R. Co.* v. *Inhabitants of Deering* (1885), 78 Me. 61, 2 Atl. 670; *Chicago, etc., R. Co.* v. *City of Chicago* (1892), 140 Ill. 309, 29 N. E. 1109, and cases cited; *Illinois Cent. R. Co.* v. *Willenborg* (1886), 117 Ill. 203, 7 N. E. 698, 57 Am. Rep. 862; *Chicago, etc., R. Co.* v. *Chicago* (1897), 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed.

979. It is evident that in proceedings to establish a public highway across a railroad track, the railroad company is not entitled to any damages for the cost and expense of complying with the requirements of laws passed in the exercise of the police power, and that, when the highway crosses the right of way at a point where the company has only a track or switch, no question can justly arise as to any impairment of its franchise by such taking, for under such circumstances both the use as a highway and as a railway can stand together, and do not interfere with each other. Elliott, Railroads, §§1103, 1104, and cases cited; *Morris, etc., R. Co.* v. *City of Orange* (1899), 63 N. J. L. 252, 43 Atl. 730, 47 Atl. 363; *Chicago, etc., R. Co.* v. *City of Chicago* (1892), 140 Ill. 309; *Illinois Cent. R. Co.* v. *Willenborg, supra; Chicago, etc., R. Co.* v. *City of Pontiac* (1897), 169 Ill. 155, 48 N. E. 485; *Illinois Cent. R. Co.* v. *City of Chicago* (1892), 141 Ill. 586, 30 N. E. 1044, 17 L. R. A. 530; *Lake Shore, etc., R. Co.* v. *City of Chicago* (1893), 148 Ill. 509; *Chicago, etc., R. Co.* v. *City of Chicago* (1894), 149 Ill. 457, 37 N. E. 78; *State, ex rel.,* v. *Chicago, etc., R. Co.* (1890), 29 Neb. 412, 45 N. W. 469, and cases cited; *Cleveland* v. *City Council of Augusta* (1897), 102 Ga. 233, 29 S. E. 584, 43 L. R. A. 638, and cases cited; *Boston, etc., R. Co.* v. *County Commissioners* (1887), 79 Me. 386, 10 Atl. 113; *Portland, etc., R. Co.* v. *Inhabitants of Deering, supra; Thorpe* v. *Rutland, etc., R. Co.* (1854), 27 Vt. 140, 62 Am. Dec. 625; *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.* (1876), 30 Ohio St. 604; *Railway Co.* v. *Sharpe* (1882), 38 Ohio St. 150.

In *Chicago, etc., R. Co.* v. *Chicago* (1897), 166 U. S. 226, 251, the court said: "It is next contended that error of law was committed by the refusal of the court to allow the company to prove that in the event of the opening of the street it would be necessary, in order that the railroad be properly and safely operated, to construct gates and a tower for operating them, plank the crossing, fill between the rails,

put in an extra rail, and to incur an annual expense of depreciations, maintenance, employment of gatemen, etc.   It was not claimed that the railroad company could recover specifically on account of such expenditures, but that the proof of their being made necessary by the opening of the street was admissible for the purpose of showing the compensation due to the company.   There are some authorities that seem to support the view taken by the railroad company, but we are of opinion that no error was committed in excluding the evidence offered.

"The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad.   The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety.   And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise.   Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law.   The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people. In the recent case of *New York, etc., Railroad* v. *Bristol* [1894], 151 U. S. 556, 567, this court declared it to be thoroughly established that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the states, are

not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. 'The governmental power of self-protection,' the court said, 'can not be contracted away, nor can the exercise of rights granted, nor the use of property be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.' See *New Orleans Gas Co.* v. *Louisiana Light Co.* [1885], 115 U. S. 650, 671.

"In *Toledo, etc., R. Co.* v. *Deacon* [1872], 63 Ill. 91, the supreme court of Illinois said: 'The state has reserved to itself the power to enact all police laws necessary and proper to secure and protect the life and property of the citizen. Prominent among the rights reserved, and which must inhere in the state, is the power to regulate the approaches to and the crossing of public highways, and the passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains. The exercise of their franchises by corporations must yield to the public exigencies and the safety of the community.' And in *Illinois Cent. R. Co.* v. *Willenborg* [1886], 117 Ill. 203, where the question was whether a railroad company could be required to construct a farm crossing over its road years after the road had been built, the court said: 'The point is made, however, that these provisions are not obligatory on this corporation because they were enacted many years since it received its charter from the state. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining landowners, are police regulations in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built, as well as to those to be thereafter constructed. They have reference to the public security both as to persons and to property. * * * No reason is perceived why, upon the

same principle on which a railroad corporation may be required to fence its track and construct cattle-guards, it may not be required also to construct farm crossings.'

"In *Chicago, etc., R. Co.* v. *City of Chicago* [1892], 140 Ill. 309, 317-319, the question was whether, in a case where a city institutes a condemnation proceeding to open or extend a street across a railroad already constructed, the company owning such railroad was entitled to be allowed, as a part of its just compensation, the amount of its expenses in constructing and maintaining the street crossing. In that case it appeared that the railroad was constructed prior to the above act of 1872 for the incorporation of cities and villages, and before the passage of the act of 1874, which required that thereafter at all railroad crossings of highways 'and streets' the railroad companies should construct and maintain such crossings, and the approaches thereto, within their respective rights of way, so that at all times they should be safe as to person and property. 2 Starr & Curt. Ann. Stat. 1927. The court said: 'Government owes to its citizens the duty of providing and preserving safe and convenient highways. From this duty results the right of public control over public highways. Railroads are public highways, and in their relations as such to the public are subject to legislative supervision, though the interests of their shareholders are private property. Every railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way. * * * If railroads so far as they are public highways are, like other highways, subject to legislative supervision, then railroad companies in their relations to highways and streets which intersect their rights of way are subject to the control of the police power of the state; that power of which this court has said that "it may be assumed that it is a power coextensive with self-protection and is not inaptly termed the law of overruling necessity." *Lake View* v. *Rose Hill*

*Cemetery Co.* [1873], 70 Ill. 191. The requirement embodied in section eight, that railroad companies shall construct and maintain the highway and street crossings and the approaches thereto within their respective rights of way is nothing more than a police regulation. It is proper that the portion of the street or highway which is within the limits of the railroad should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street and of those riding on the cars. * * * The items of expense for which appellant claims compensation are such only as are involved in its compliance with a police regulation of the statute. It is well settled that "neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare." *Chicago, etc., R. Co.* v. *Joliet, etc., Railroad* [1883], 105 Ill. 388. It has been held by this court in a number of cases that railroad corporations may be required to fence their tracks, to put in cattle-guards, to place upon their engines a bell, and to do other things for the protection of life and property, although their charters contained no such requirements. *Galena, etc., Railroad* v. *Loomis* [1852], 13 Ill. 548; *Galena, etc., Railroad* v. *Dill* [1859], 22 Ill. 264; *Ohio, etc., Railroad* v. *McClelland* [1860], 25 Ill. 140 [Freeman & Gross ed., p. 123]; *Peoria, etc., Railway* v. *Peoria, etc., Railroad* [1882], 105 Ill. 110. * * * Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest.' See, also, *Mugler* v. *Kansas* [1887], 123 U. S. 623, 668; *Boston, etc., R. Co.* v. *County Commissioners* [1887], 79 Me. 386; *Thorpe* v. *Rutland, etc., R. Co.* [1855], 27 Vt. 140; *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.*

[1876], 30 Ohio St. 604; *Portland, etc., R. Co.* v. *Inhabitants of Deering* [1885], 78 Me. 61, 70; *State, ex rel.,* v. *Chicago, etc., R. Co.* [1890], 29 Neb. 412, 45 N. W. 469; *New York, etc., Railway* v. *Waterbury* [1891] 60 Conn. 1; *Charlotte, etc., Railroad* v. *Gibbes* [1892], 142 U. S. 386, 393.

"We concur in these views. The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated—if all that should be required—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state."

It follows that said appellant railroad companies were not entitled to any damages on account of the cost and expense of constructing and maintaining said crossings. The fact that no damages were assessed or allowed for such cost and expense furnishes said appellants no grounds for a reversal of this cause.

Counsel for appellant Hume complain in their brief of the action of the court in sustaining an objection to a question propounded to a witness called by them on behalf of said Hume concerning the value of his land on which the proposed road was to be located. Counsel for said appellant do not say that said witness had shown that he was competent to give an opinion as to the value of said land, nor have they set out in their brief his testimony, or any part thereof, or the substance thereof, as required by clause five of rule twenty-two of this court. It has been uniformly held by this court that said rule requires that the briefs be so prepared that all questions presented by the assignment of errors can be determined by an examination of the briefs, without looking to the record, and that, to the extent said

State, *ex rel.*, *v.* Indianapolis Gas Co.

rule has been complied with, the errors assigned will be determined, and the others will be considered waived. *Mc-Elwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557, 559; *Cleveland, etc., R. Co.* v. *Stewart* (1903), 161 Ind. 242; *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435, 437, 438; *Security, etc., Assn.* v. *Lee* (1903), 160 Ind. 249; *Pittsburgh, etc., R. Co.* v. *Wilson* (1904), 161 Ind. 701; *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), *post,* 288, and cases cited. Moreover, it is said by appellees in their brief that said witness had not shown by his testimony that he was competent to give an opinion as to the value of said land, and this statement is not denied, avoided, or corrected by said appellant Hume. Under such circumstances, we will presume, in favor of the action of the court, that the objection was sustained for the reason that the witness had not shown that he was competent to testify as to the value of said land.

Judgment affirmed.