Cincinnati, etc., R. Co. *v.* City of Connersville—170 Ind. 316.

sufficient to sustain the findings of the court, that Samuel Martin was the owner in fee simple of the 120-acre tract of land in controversy. His counsel insist that Elizabeth Gordon made the conveyance to her nephew Samuel Martin, upon the condition or consideration that he should live upon the land, and support and care for her during her lifetime; but that this contract was rescinded, Martin was released, and he reconveyed the land to Miss Gordon; that he removed from the country out into Idaho, where he remained for more than thirty years, and until his death. This claim upon the evidence is plausible, but it is well understood that we are not afforded equal opportunities with the trial court for determining questions of fact upon parol evidence. The burden of establishing this proposition rested upon appellant, and its determination depended upon the credibility of witnesses and the weight to be given to their oral testimony. It is manifest that the trial judge, with the witnesses before him, could more certainly decide the ultimate fact correctly, than we can upon a mere lifeless transcript.

It appears to us, however, that the justice of the cause will be best subserved by ordering a retrial.

The judgment is therefore reversed, with directions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

---

CINCINNATI, INDIANAPOLIS & WESTERN RAILWAY COMPANY *v.* CITY OF CONNERSVILLE.

[No. 21,012.   Filed January 28, 1908.   Rehearing denied April 29, 1908.]

1. RAILROADS. — *Highway Crossings. — Construction of.* — Under §5195 Burns 1908, §3903 R. S. 1881, it is the duty of railroad companies to construct and keep in safe condition all highway crossings, whether the highways were established before or after the building of the railroads. p. 319.

2. RAILROADS.—*Franchise.—Existing Statutes.*—Where a statute imposing certain duties upon railroad companies, was in force at the time of a railroad company's acceptance of a franchise, such company impliedly assumes the duties imposed by such statute. p. 320.

3. SAME.—*Construction of Highway Crossings.—Costs of.*—The statute (§5195 Burns 1908, §3903 R. S. 1881), providing that railroad companies shall construct and keep safe their highway crossings, requires such construction at their expense. p. 320.

4. EMINENT DOMAIN.—*Police Power.—Distinction.*—The right of eminent domain is a reserved power of sovereignty, exercisable for the public welfare upon payment of full compensation; while the exercise of the police power implies a sovereign regulation, without compensation, of a supposed wrong or evil, for the benefit of the public safety, health, morals, or general welfare. p. 321.

5. CONSTITUTIONAL LAW. — *Police Power.* — *Objects.* — Under the police power, the state may legislate concerning foods, intoxicating liquors, theaters, fire escapes, buildings, machinery, mines, population and safety; and no compensation for losses sustained can be recovered. p. 322.

6. SAME.—*Railroads.—Construction of Highway Crossings.*—Railroad companies may be compelled, under the police power, to construct, at their own expense, highway crossings. p. 323.

7. RAILROADS.—*Eminent Domain.—Police Power.—Streets.—Damages.*—The property taken from a railroad company, by a city, for the extension of its streets, requires compensation; but such company can require no pay for the construction of the crossing required by the opening of such streets. p. 324.

8. CONSTITUTIONAL LAW.—*Compliance with Police Regulations.—Compensation.*—Compliance with police regulations, by corporations, requires no compensation, and though property is injured or lost thereby, it does not amount to a taking of private property within the inhibitions of the state or federal Constitution. p. 324.

9. RAILROADS.—*Easements.—Condemnation of, for Street.*—A railroad company owns only an easement in the land; and the condemnation of such land for street purposes, where the company, after the crossing is constructed, has the use of its right of way, does not injure such company in the enjoyment of its right of way. p. 325.

From Henry Circuit Court; *John M. Morris,* Judge.

Action by the City of Connersville against the Cincinnati, Indianapolis & Western Railway Company. From the judgment rendered, defendant appeals. (Appealed to United States Supreme Court.) *Affirmed.*

*John B. Elam, James W. Fesler, Harvey J. Elam, Forkner & Forkner* and *Conner & Conner,* for appellant.

*R. N. Elliott* and *D. W. McKee,* for appellee.

HADLEY, J.—In 1869 appellant's grantor constructed a railroad from Indianapolis to Cincinnati, by way of Connersville. In passing the city of Connersville, the railroad track for some distance was on an embankment fifteen feet high, sixty-six feet wide at the bottom and sixteen feet wide at the top. When built this part of the road was outside of the city limits, and all the population resided south of the railroad. Now the territory crossed by the embankment is within the city limits, and about one-half of the city's population reside north and the other half south of the railroad. The railroad runs east and west through the city. Running north and south entirely across the city is Grand avenue, both ends of which are open and used to the railroad embankment. There is an under-grade crossing 450 feet east of Grand avenue and another crossing 600 feet west of Grand avenue. A traveler on Grand avenue had no other more convenient way of crossing the railroad than by one or the other of these crossings.

This is a condemnation proceeding by appellee city to extend Grand avenue across the right of way of appellant, and the only question raised in this court relates to appellant's damages.

Grand avenue is sixty feet wide, and its extension through the railroad right of way requires the appropriation of a strip of ground sixty-six feet long (the bottom width of the railroad embankment) and sixty feet wide. Appellant has only an easement in the land. From the evidence allowed and rejected, and the instructions given and refused, it is manifest that the question was submitted to the jury on the theory that appellant was entitled to damages for (1) the value of any land actually taken from it, (2) the value of the embankment necessarily taken, (3) the cost of re-

moving such embankment. "The sum of these items," the court instructed the jury, "will constitute the full measure of the defendant's damages." The court refused to submit the question upon appellant's theory, viz., that, in addition to the elements of damage enumerated by the court in its charge to the jury, there should also have been a statement that appellant was entitled to recover for any special or peculiar damage it would suffer by reason of the taking of the embankment which had been specially prepared for, and was being used as a part of, its railroad, as well as the full cost of the structural change, or for the putting in of the necessary bridge over the highway. Were the rulings of the court erroneous?

The adjudications cited and relied upon by counsel for appellant cannot be accepted as supporting their view of the law. So far as we have observed, in every state

1. referred to except New Jersey, where there appears to be no legislation on this subject, the cases cited rest upon local statutes which, in requiring railroad companies to construct and restore highway crossings, have been construed expressly or impliedly to refer to such highways as were constructed before the railroad was built. In this State the law is ruled by §5195 Burns 1908, §3903 R. S. 1881, which provides that every railroad "corporation shall possess the general powers, and be subject to the liabilities and restrictions expressed in the special powers following: * * * Fifth. To construct its road upon or across any * * * highway * * * so as not to interfere with the free use of the same, * * * in such manner as to afford security for life and property; but the corporation shall restore the * * * highway thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness." This statute has been in force since May, 1853. In the case of *Louisville, etc., R. Co.* v. *Smith* (1883), 91 Ind. 119, 121, it was said in construing this statute: "Whether the highway is laid out and opened before

320 SUPREME COURT OF INDIANA,

Cincinnati, etc., R. Co. *v.* City of Connersville—170 Ind. 316.

or after the construction of the railroad, the legislative intent in the clause quoted is clear, we think, that the railroad company shall construct its road, at its intersection with such highway, 'in such manner as to afford security for life and property.' " This interpretation of the statute has since been many times reaffirmed by this court, the last expression being in *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36, 41, as follows: "Under the statutes of this State it is the duty of all railroad companies to construct and keep in safe and good condition all highway crossings, and this duty is the same whether the highway was established before or after the railroad was built." Citing divers cases.

This statute was in full force and effect when appellant accepted its franchise, and the acceptance carried with it an assumption of all the duties and obligations imposed by the statute. It was bound to take notice that the right of the people to establish and maintain public highways over the territory remained unimpaired; and whether laid out before or after the railroad it should be the duty of the company to construct and maintain the crossing in such condition as will render it suitable and reasonably safe as a railroad crossing for the passage of trains and of travelers on the highway. There is no cross-assignment of error, and we are therefore not called upon to decide whether the instructions given by the court contained a correct expression of the law relating to such subject, for under the view we have taken of the case it is clear that the instructions given did not tend in any way to injure appellant.

As laid down in *Lake Erie, etc., R. Co.* v. *Shelley, supra,* the statute of this State requires all railroad companies to construct and keep in reasonably safe and good condition, all highway crossings, without reference as to whether the highway was laid out and opened before or after the railroad. The duty to construct

and keep in repair implies the obligation to defray the expenses and costs of such construction and repairs. *Southern Ind. R. Co.* v. *McCarrell* (1904), 163 Ind. 469. It is, however, argued by appellant's counsel that this being a condemnation proceeding under the right of eminent domain, appellant is entitled to full compensatory damages, which includes, not only the value of the property taken, but, also, all consequential injury to the remaining property, which in this case embraces, in addition to the elements of damage enumerated by the court, the cost of putting in the bridge over the street, and that a denial of damage for the cost of the bridge made necessary by the street crossing is a taking of private property for public use without just compensation, in violation of both the federal and state Constitutions.

Appellant's counsel overlook the fact that there are two distinct principles of law that operate upon the question we have under consideration; namely, "eminent domain," which implies a taking by the sovereign for some public benefit, and the "police power," which implies a regulation by the sovereign of private property for the preservation of the public safety, health and general welfare. "Eminent domain" is a reserved right, or an unextinguishable attribute of sovereignty, that may be exercised by the state, or its authorized agent, to effect a public good whenever public necessity requires it. Resting upon a public benefit it cannot, under the Constitution, be enjoyed by the public, except upon condition that full compensation for all damage to private property, for that taken within the meaning of the organic law, shall first be paid or tendered. The "police power" arises from a very different source. It springs from the fundamental principle that every property owner must so use his own as not to endanger the safety, health and general welfare of the community in which he lives. 1 Lewis, Eminent Domain (2d ed.), §6,

and authorities collated. It operates upon an existing evil that injuriously affects the health, morals, safety or general welfare of the community, and is a power to which every person and corporation must yield obedience, and from which the state itself cannot grant exemption. *Stone* v. *Mississippi* (1879), 101 U. S. 814, 25 L. Ed. 1079; *Butchers Union, etc., Co.* v. *Crescent City Live-Stock, etc., Co.* (1884), 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585. "It does extend to the protection of the lives, health and property of the citizens, and to the preservation of good order and the public morals." *Beer Company* v. *Massachusetts* (1877), 97 U. S. 25, 33, 24 L. Ed. 989. Under its wide application, unwholesome and adulterated foods may be destroyed, the sale of intoxicating liquors restricted, easy exits from theatres and other public halls required, sometimes at heavy expense, and also the erection of fire escapes from hotels and schoolhouses required. This power may also compel builders to plank lofty floors, manufacturers to guard dangerous machinery, and miners to maintain props. In an emergency from fire it may tear down private buildings and otherwise destroy private property without rendering compensation. 2 Kent's Comm. (14th ed.), *339, notes. It may also eject from populous communities, or confiscate the business, of all forms of public nuisance, thus rendering valuable structures worthless, or of greatly reduced value, without any right to indemnity accruing to the sufferer. Railroads are by no means exempt from this power. They enjoy, as grants from the people, superior rights to go where they please, and as fast as they please, subject to the duties that are constantly being imposed upon them, having reference to the safety of persons and property. The use of improved brakes, switches, signals, couplers, and a multitude of other safety devices are often commanded, though previously-used devices are thereby rendered worthless.

The same principle applies with equal vigor to highway

crossings.· There is probably more human life and property destroyed from collision with trains at railroad cross-

6. ings than from all other railroad accidents combined.

It is evident that a high degree of care to avoid accidents at crossings is of first importance. And there are reasons why railroad companies should be charged with the duty of constructing and maintaining all such crossings in a suitable and safe condition. In the first place, their right to traverse the country on private property is subject to the right of the people to construct highways for their own convenience across the same country and the railroad, whenever it becomes necessary. *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.* (1876), 30 Ohio St. 604; *Chicago, etc., R. Co.* v. *City of Chicago* (1892), 140 Ill. 309, 317, 29 N. E. 1109. In the second place, the peculiar danger at the crossings is all created by the railroads. In the third place, the companies know best the character and requirements of their trains, and the means best calculated to minimize the dangers. In the fourth place, a divided responsibility would likely prove impracticable, impolitic and inefficient, and, in view of the burdensome liability of railroad companies to their passengers, it is clear that the companies should have the entire control of all things necessary to be done within their rights of way, for any purpose, whether for the benefit of the company or the public. However, the legislature deemed it expedient to enact §5195, *supra,* which, under the interpretation given it by this court, requires a railroad company, at its own expense, to do whatever the conditions present at each particular place require to be done to render the crossing suitable and reasonably safe, "or in a sufficient manner not to unnecessarily impair the usefulness" of the highway, "or interfere with the free use of the same," and "in such manner as to afford security for life and property." And when necessary to accomplish these ends the company will be required to carry its railroad over or under the highway, as the case may be. 3 Elliott, Railroads (2d ed.), §1107; El-

liott, Roads and Sts. (2d ed.), §778; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, and cases cited; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219. Applying these principles to the question before us, the appeal must fail.

Whatever was necessarily taken from the railroad company by the city in the extension of its street over the company's right of way may be said to have been taken

7. in the exercise of eminent domain, and therefore subject to full compensation. But when the street is established across the right of way, whatever is then necessary, under the statute, for the company to do to construct and maintain the crossing in such manner as will render it suitable and safe as a railroad crossing, for the passage of trains and of travelers on the highway, is a regulation emanating from the police power, and must be complied with without compensation. 1 Lewis, Eminent Domain (2d ed.), §§6, 156; *Chicago, etc., R. Co.* v. *State, ex rel., supra,* and cases cited; 3 Elliott, Railroads (2d ed.), §1107.

The rule is well settled that neither a person nor a corporation can claim damages on account of being compelled to comply with a police regulation, designed to secure

8. the public health, safety or welfare. 1 Lewis, Eminent Domain (2d ed.), §6; *Lake Erie, etc., R. Co.* v. *Shelley, supra;* 3 Elliott, Railroads (2d ed.), §1103; *Chicago, etc., R. Co.* v. *City of Chicago, supra.* It is equally well settled that an uncompensated obedience to a regulation, ordained to secure the public health and safety, is not a taking of private property, within the inhibitions of the state or federal Constitution. 1 Lewis, Eminent Domain (2d. ed.), §6; *Mugler* v. *Kansas* (1887), 123 U. S. 623, 668, 8 Sup. Ct. 273, 31 L. Ed. 205; *Lake Erie, etc., R. Co.* v. *Shelley, supra,* and cases cited.

In the case at bar the jury was directed to allow appellant

for the value of the land actually taken by the city in extending its street across the right of way, being a strip sixty-six feet long (the bottom width of the railroad embankment) and sixty feet wide (the width of the street). Appellant had no interest in the land as land, except an easement, that is, a right to lay its track and operate its cars and trains over the same; and when the company had constructed the crossing as required by the law, and could run its cars and trains on the bridge over and across the street on the same old line and grade, it was still in the full enjoyment of its easement, and there was no taking of its land beyond a temporary inconvenience. The court also instructed the jury further to allow appellant the value of the section of the embankment that must be removed, and also the cost of removing the same. The award under these instructions was $800, and it is clear that the instructions were as favorable to appellant as, under the laws of this State, it has the right to ask. See *Chicago, etc., R. Co.* v. *Chicago* (1897), 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979.

Judgment affirmed.